TURBUTT R. BETTON, APPELLANT, *vs.* ROBERT W. WILLIAMS AND
THE HEIRS AT LAW OF GENERAL LAFAYETTE, RESPONDENTS.

Where a bill is taken *pro confesso,* and a final decree passes by default, an appeal cannot be taken.

Under the statute of this State, an appeal may be taken only after a final decree—and, consequently, the appeal opens every question decided by the Chancellor during the progress of the cause, and, also, the regularity of the proceedings therein prior to a default.

A demurrer to a bill, for want of proper parties, is well taken, if the defect appears upon the face of the bill, especially if, on examination, it is found that the persons omitted are indispensable to a complete adjudication of the rights of all interested.

Under the general rule in equity, that all persons materially interested in the subject ought to be parties to the suit, either plaintiffs or defendants, the vendors of land should be parties to a suit against the vendee, to enforce the lien of the purchase money on the land; and this rule applies where they have assigned the bonds or notes given for the price of the land, if there are any remaining rights or liabilities of the assignors which may be affected by the decree. Where there are such rights, or the assignment is not absolute and unconditional, or the extent or validity of the assignment is denied, *then* an assignor is not only a proper, but a necessary party.

Where there is a contract to make title to land, upon payment of a certain sum of money, though the bond securing the payment of the money is assigned, yet the obligation remains to make the title, when the condition is performed; and this obligation cannot be delegated to another, without the consent of the vendee. An objection that the person who has so contracted is not made a party to a bill to enforce the lien upon the land is well founded, and ought to be sustained. The allegation of the insolvency of the assignor in such a case is not sufficient to excuse the omission.

The original vendee of an estate is not a *necessary* party to a bill against his assignee, for a specific performance of an agreement to purchase.

Appeal from a decree of the Hon. THOMAS BALTZELL, Judge of the Middle Circuit of the State of Florida, made on the 20th of June, A. D., 1850.

To the bill of complainants in the Court below, Betton filed a demurrer—among other causes stated, for want of proper parties. The demurrer was overruled by the Judge on the 29th day of December, 1848, and the defendant had leave to answer by the first Monday in February thereafter. The defendant not having answered at the time required, a decree was entered upon the rule book in the clerk's office, taking the bill as confessed. A final decree passed on the 20th of June, 1850, and on the next day, the defendant appealed.

The object and purpose of the bill, and all other matters involved in the case, are sufficiently stated in the opinion of the Court.

The cause was argued by Archer for Appellant, and Branch and Hogue, for Respondents.

The Court pronounced the following opinion, reversing the decretal order of the Court below, by which the demurrer of the appellant was overruled, vacating and annulling all the subsequent proceedings up to and including the final decree of June 20th, 1850, and remanding the cause to the Circuit Court of the Middle Circuit, sitting in and for the County of Leon, with directions to allow the demurrer, with leave to complainants to amend their bill, and for such other proceedings as the case required, in accordance with the usual course of Chancery practice.

THOMPSON, *Justice*, delivered the opinion.

In 1833, General LaFayette, of France, sold on a credit to William B. Nuttall, Hector W. Braden and William P. Craig, twenty-six sections of land in Florida, receiving their bonds for the purchase money and interest, and executing and delivering them a bond to make titles, on payment of the purchase money. Soon afterwards, Messrs. Nuttall, Braden and Craig sold out a large portion of these lands to other persons, and among others, to John M. G. Hunter, a tract

containing nine hundred and sixty acres, which is particularly described in the bill. This sale was also on credit. Hunter having executed and delivered his bonds for the purchase money and interest, received from Nuttall, Braden and Craig the possession of the land contracted for, and their bond to make titles, when the purchase money should be paid. Hunter sold and assigned his contract to one Baker Johnson, from whom, by successive sales and assignments, the right and interest of Hunter in said contract, and the possession of the land thereunder, were passed through divers persons to the appellant, Turbutt R. Betton, who, at the time of filing the bill, was, and for some time previously had been, in possession of the premises, and claiming to hold under the contract of purchase aforesaid.

At some time subsequent to the sale to Hunter by Nuttall, Braden and Craig, the time not being set forth in the bill, the latter entered into an arrangement with the Union Bank of Florida, by which, in consideration of the transfer of a sufficient number of the bonds which they had received from their vendees of the said lands, among which were the bonds of Hunter before mentioned, the Union Bank contracted and agreed with Nuttall, Braden and Craig, to pay their debt to General LaFayette, for principal and interest of the original purchase money, as their bonds should respectively fall due, and become payable. The Union Bank failed to pay the debt due to General LaFayette by Messrs. Nuttall, Braden and Craig, and, becoming embarrassed in its affairs, with the view to secure the payment of the said debt, transferred to the respondent, Robert W. Williams, who was the agent and attorney of General LaFayette, amongst other bonds of a similar character, the said bonds of John M. G. Hunter, upon trust, to sue for and collect the same, and apply the proceeds to the payment of the debt due LaFayette, in redemption of the engagement of the Bank.

The bill in this case was filed to subject the land sold to

Hunter to the payment of the purchase money debt ; and al-though the heirs at law of the original vendor, Gen. LaFa-yette, join in the suit as parties complainants, yet the suit is substantially a proceeding by Williams, the assignee of the bonds, to enforce the lien on the land, under the contract be-tween Nuttall, Braden and Craig, and Hunter ; the heirs of LaFayette join, we presume, as the persons holding the legal title, and who are willing to convey the estate, upon the exe-cution of the sub-contract by the purchaser, or his assignee. Betton demurred to the bill, and the demurrer, upon argu-ment, was overruled, and he was ordered to answer by the first Monday of February, 1849. No answer being filed, the bill was taken for confessed at Rules, at the Clerk's office on that day. The cause then proceeded *ex parte*, and a final decree passed on the 20th June, 1850, and on the next day, Betton entered his appeal to this Court. It is contended by respondents that this appeal cannot be sustained, because the appellant, in the Court below, suffered the bill to be taken *pro confesso*, and the final decree passed by default. This is undoubtedly the rule in Chancery in England, and which has been recognized and adopted as the correct rule in seve-ral of the States of the Union. 2 Smith's Chancery Practice, 22. 1 Bland's Reports, 12, 35. 8 Wendell's Reports, 219. 25 Wendell's Reports, 249. 12 Johnson's Reports, 493 ; and we think such rule is consonant with reason, and should be enforced here, so far as it can be made applicable to our practice. In New York, as in England, an appeal may be taken from an interlocutory order or decree, and if the party declines to appeal, or omits to do so, within the time limited, he will be considered as acquescing in the propriety of the decree, and a subsequent default, will debar him from bring-ing any question in the cause before the appellate tribunal. Sands v. Hildreth, 12 Johnson's Reports, 493. Kane v. Whit-tick, 8 Wendell's Reports, 219. Under our statute, an appeal may be taken only after a final decree, the consequence of

which is, that the appeal opens every question decided by the Chancellor in the Circuit Court during the progress of the cause, and, also, the regularity of the proceedings therein prior to a default.   Betton could not appeal from the decretal order of December 29th, 1848, overruling the demurrer, because it was not a final decree.   He could, we conceive, adopt either of two courses ;—to answer the bill, defend the cause upon the merits, and on appeal, present the questions arising on the demurrer to this Court for its review, as well as the merits of the final decree ; or, it was competent for him to do as he has done, after the judgment of the Court on the demurrer, to abandon further defence, and rely on what he considered the erroneous judgment of the Chancellor.   Mr. Betton was not in default until February rules, 1849, consequently we consider he has the right, after final judgment, to enter his appeal, and bring before this Court the matters in the record prior to his default— the decree *pro confesso*, and all other subsequent proceedings in this cause, no matter how erroneous they be, cannot be examined into upon his complaint.

From the view which we have taken of the effect of a decree *pro confesso*, or a default in a Chancery proceeding, it results in this case, that our inquiry must be limited to the decree of the Circuit Court of the 29th December, 1848, overruling the demurrer, and if that judgment be found correct, the final decree must be affirmed.

The demurrer does not allege a want of equity in the bill— indeed, it is conceded in the argument by counsel for the appellant, that Williams, as the assignee of the bonds of Hunter, given for the price of the land, and the interest thereon, has the same right, which the assignors, Nuttall, Braden and Craig, had, to subject the land to the payment of the debt ; but it alleges a want of proper parties defendants in general terms.

It is objected by the counsel for the respondents, that a

demurrer, for want of proper parties, must show who are the proper parties—not, indeed, by name, but in such manner as to point out to the plaintiff the objection to the bill, and to enable him to amend by adding the proper parties. Such is the rule laid down in all the treatises on Chancery pleading and practice. Mitford's Chancery Pleading, 180. 1 Daniel's Chancery Practice, 385. Story's Equity Pleadings, 238, 543. However, in Tourton vs. Flower, 3 Peere-Williams', 369, there was a demurrer, for want of a particular party pointed to in the demurrer, by reference, in compliance with the rule, and the demurrer being held to be ill for that cause, as the party referred to was, in fact, before the Court, it was then alleged *ore tenus* at the bar, the absence of another and necessary party, and the demurrer was held good for this last cause, though without costs—this seeming to be, according to the judgment of Lord Chancellor Talbot, the penalty for a demurrer *ore tenus* at the bar, as this was held to be. So in Pyle v. Price, 6 Vesey Junior's Reports, 780, there was a general demurrer, and the objection of the want of proper parties was alleged *ore tenus*. It was insisted in this case, that a demurrer, for such a ground, must point to the parties by name, or by reference. Lord Eldon is reported to have said, it was doubtful whether there was a general rule that a demurrer, for want of parties, must state the parties; and in a late case in the English Chancery, *The Attorney General* v. *Poole*, (4 Mylne & Craig's Reports, 32,) Lord Cottenham says upon this point, that Lord Redesdale, in his book, certainly so states the rule, and that that passage has been adopted by subsequent writers upon equity pleading, but no authority is referred to in support of the *dictum*. He says further, "that it is not necessary to inquire how far that proposition is consistent with the general doctrine upon the subject of demurrers, or with the well established practice of allowing demurrers *ore tenus*, for want of parties. There seems, at least, sufficient ground for the

doubt suggested by Lord Eldon, in Pyle v. Price." We find, also, a *dictum* of the Supreme Court of the United States, in Whiting v. The Bank, in which it is said, that the objection of a want of a proper party ought properly to have been taken by the parties in that suit at the original hearing, *or upon appeal*, if any, before the Appellate Court. See 13 Peters' Reports, 14. We are, however, satisfied that the objection to the demurrer, if available at all, should have been taken in the Court below, by a motion to have the demurrer taken off the file, or some other appropriate motion, by which the Court would have passed upon the validity of the pleading, and the judgment thereon being entered of record, its propriety could have been reviewed by this Court, on appeal.

In the case at bar, the ground stated in the demurrer is, that the proper parties are not made defendants to the suit; and as this objection is taken by demurrer, and the defect, if it exists at all, must appear on the face of the bill, we are inclined to think it sufficiently certain, especially if, on examination, we find that the persons omitted are " indispensable to a complete adjudication of the rights of all interested, so that the performance of the decree of this Court may be perfectly safe to those who are compelled to obey it, and, also, that future litigation may be prevented." Story's Equity Pleadings, § 72.

It is alleged in argument by the appellant, that the following persons are necessary and proper parties, and who should have been made defendants in this suit: 1. William P. Craig, the heirs at law of William B. Nuttall, and the heirs at law of Hector W. Braden, who are the vendors of the land in question to Hunter, and who are bound by their contract with him to execute a title, on payment of the purchase money. 2. John M. G. Hunter, the vendee of Nuttall, Braden and Craig, who is still liable on his bonds for the purchase money and interest, and is interested in taking

3

the account of what is due thereon, and who is entitled to be exonerated from liability, on payment of the purchase money, or recission of the contract.    3. The Union Bank of Florida, as the assignee of Nuttall, Braden and Craig, and the *cestui que trust* of Williams, as to the residue of the fund transferred to him, after the satisfaction of the debt due the heirs of LaFayette.

It is insisted for the respondents, that it does not appear that Nuttall, Braden and Craig, the Union Bank, or Hunter, are necessary parties—that they have no rights to be affected or concluded by the decree, nor are they under any obligations necessary to be noticed, when the persons holding the legal title to the land, and holding the notes given by Hunter, are offering to convey, on payment of the purchase money—that the requisition of the title of Nuttall, Braden and Craig, is a mere pretence, Betton knowing, from the beginning, that the legal title to the land was in LaFayette, and not in Nuttall, Braden and Craig; and that the latter could not convey any title thereto.

The general rule in equity is thus stated by Lord Redesdale : "all persons materially interested in the subject ought generally to be parties to the suit, plaintiffs or defendants, however numerous they may be, so that the Court may be enabled to do complete justice, by deciding upon and settling the rights of all persons interested." Mitford's Pleadings, 164. See, also, Story's Equity Pleadings, § 72. And in treating of the necessity of making an assignor a party to a suit, Judge Story says, that "where the assignment is not absolute and unconditional, or the extent or validity of the assignment is denied, or there are remaining rights or liabilities of the assignor, which may be affected by the decree, then he is not only a proper, but a necessary party." Story's Equity Pleadings, § 153.

1. Applying the rules thus laid down to the facts stated in the bill, are not the vendors of the land to John M. G.

Hunter materially interested, not only in the subject matter of the suit, but also in its object? Are there not remaining rights and liabilities of those persons, which will be affected by the decree? The subject matter of the suit is a contract which they made with Hunter, by which they bound themselves, on the payment of certain sums of money, to make title to certain lands; now, although they have assigned the bonds, by which the money was secured to be paid, yet the obligation remains that they should make the title, when the condition is performed; and this obligation they have not delegated, and, indeed, cannot delegate to another, except with the consent of their vendee, or his assignee. Nuttall, Braden and Craig did not assign to Hunter the contract which they had made with LaFayette, either in whole or in part, neither did they stipulate that they would procure the title to be made to Hunter by LaFayette; but for aught that appears in the bill, Hunter may have supposed that they possessed a full and complete legal title, and such must be the inference from the statement of the contract between them. It is true that neither Hunter, nor his assignee, could be compelled to accept a conveyance from Nuttall, Braden and Craig, unless the title was in them, and they had a good right to convey the property. If, upon an examination of title preparatory to the consummation of the contract, it was found that the legal title was in LaFayette, he might well insist on a conveyance directly to himself of LaFayette's title, as well as a conveyance from his vendors. It might be deemed necessary to his perfect assurance. Clark v. Redman, 1 Blackford's Reports, 179. Lawrence v. Parker, 1 Massachusetts Reports, 191. Taylor v. Porter, 1 Dana's Reports, 422. It would, therefore, result as a necessary consequence, that, in a suit against the vendee to enforce the lien of the purchase money on the land, the vendors should be parties to the suit, so as to be bound by the decree of the Court to make the conveyance which they had

contracted to make, and which the vendee or his assignee has a right to require, before he parts with his money. They should properly join as complainants with their assignee; but if their authority cannot be obtained for this purpose, they may be made defendants—it is not of much importance how they appear, so they are before the Court, and may be subject to the decree to be rendered.

So, also, we think Nuttall, Braden and Craig have rights connected with their liabilities—they are indebted to the heirs of LaFayette for the original purchase money, or some portion thereof, as alleged in the bill, and are, therefore, interested in its payment, to be relieved from liability. It is true that the bill alleges that Nuttall and Braden are both dead, and that their estates, as well as the survivor, Craig, are insolvent, but the latter may not always remain so. At any rate, insolvency does not always render it unnecessary to make the individual a party. In the case of Brooks v. Stuart, 1 Beavan's Reports, 514, the insolvency and discharge of a principal debtor, in a joint and several contract, was held by Lord Langdale, Master of the Rolls, not a sufficient excuse for omitting to make him a party defendant in a suit against the surety, and a demurrer was allowed for that objection; and we think there is much stronger reason why the vendors of Hunter, though insolvent, should be parties to this controversy. So, also, it may be true, as alleged, that the Union Bank has, for a full and valuable consideration, undertaken to pay the debt due to LaFayette; but it is distinctly averred in the bill, that the latter has not accepted the Bank as his debtor, or in any wise released his claim upon Nuttall, Braden and Craig; and, besides, the Union Bank is alleged to be insolvent. There can be no doubt but that Nuttall, Braden and Craig are materially interested in the object of the suit, which is to recover a fund, which is to go in liquidation of their debt. The Court below should have allowed the demurrer, for the want of these parties.

We are relieved from the consideration of the question of the notice, which it was alleged in argument, Hunter and his assignee had of the fact that Nuttall, Braden and Craig had only an equitable title, and that the legal title was in LaFayette, because we find no such allegation in the bill. The only allegation of any knowledge on the part of Betton, is contained in the following averment at the conclusion of what is termed the charging part of the bill : " And they," the said complainants, " further well hoped that the said Turbutt R. Betton, who now holds possession of the same, *well knowing the premises*, would have paid, or tendered to your orators the said amount of the purchase money," &c. This allegation cannot be extended, so as to amount to an averment of notice by Hunter, or Betton—that, at the time the first named entered into the contract, or the latter acquired title thereto by assignment, they were informed of the state of the title, and how the vendors, Nuttall, Braden and Craig, expected to acquire the legal title.

2. As to Hunter, there is more doubt whether he is an indispensable party to the suit. It would seem from the application of the principle, that, as he is liable on his bond to Nuttall, Braden and Craig, so he is interested in taking the account of what is due thereon, and should, therefore, be considered a necessary party." But in Hall v. Sever, 3 Younge and Collyer, Equity Ex. C., 191, it was held, that the original vendee of an estate is not a necessary party to a bill against his assignee for a specific performance of an agreement to purchase. Upon this authority, we are inclined to consider that Hunter is not a necessary party, but as the case will, necessarily, be remitted to the Circuit Court to make other parties, it might be better that the complainants should bring him before the Court.⋅ He would be a proper, although not a necessary party.

3. As to the Union Bank of Florida, we cannot perceive the necessity for bringing this corporation before the Court

in this controversy.    Whatever interest it may have in the subject matter, or object of this suit, it is sufficiently represented herein by the complainant, Williams.

The decretal order of December 29th, 1848, overruling the demurrer of the appellant, Betton, is reversed and set aside, and as a consequence of said reversal, all the subsequent proceedings in said cause, up to and including the final decree of June 20th, 1850, are hereby vacated and annulled.    Let the cause be remanded to the Circuit Court of the Middle Circuit, sitting in and for the County of Leon, with instructions to allow the said demurrer of the said appellant, for the reason stated herein, giving leave, however, to the respondents to amend their bill, by making William P. Craig, the heirs at law of William B. Nuttall, and the heirs at law of Hector W. Braden parties thereto, either as complainants or defendants, and in such other manner, and upon such terms, as the Judge of said Court, upon application to him, and on notice to the adverse party, may think proper to direct, and for such other proceedings, according to the usual course of Chancery practice, as may be requisite and necessary in the premises.

Let each party pay his own costs in this Court; and that the respondents may proceed without delay in this cause, let the mandate of this Court to the Judge of the Circuit Court of the Middle Circuit issue at any time, on the application of the respondents, or their solicitor.

Decree reversed.