THE STATE OF FLORIDA AND THE TRUSTEES OF THE INTERNAL IMPROVEMENT FUND, PLAINTIFFS AND RESPONDENTS, vs. THE JACKSONVILLE, PENSACOLA AND MOBILE RAILROAD COMPANY AND MILTON S. LITTLEFIELD, DEFENDANTS AND APPELLANTS.

1. Under the provisions of the statutes regulating the exchange of State bonds with the Jacksonville, Pensacola and Mobile Railroad Company for its bonds, the State was to occupy two relations to the purchasers of the bonds of the State. The first was that of primary debtor to the holder, and the second was that of trustee holding the bond of the company and the lien created by the act to secure payment to the party who advanced money to the company. The Legislature had no authority to create the first relation. It did have power to create the second, and a decree based upon the relation of primary debtor as fixed by the statute is erroneous. The case of Holland vs. The State of Florida, 15 Fla., 456, and the case of The State of Florida, et al. vs. The Florida Central Railroad Company, et al., 15 Fla., 724, commented upon and followed, so far as applicable to this case.

2. Bonds issued by railroad companies under the provisions of the act of the Legislature of January 10, 1855, were, under the statute, a first lien or mortgage on the roads, the equipments and franchises of the companies issuing them. A sale by the Trustees named in the act having been had and a balance of purchase money being due, an equitable lien for such balance resulted primarily to the Trustees as the vendors in the sale. A balance of purchase money being due upon the sale of each road, the right of the vendors is to a sale of each road separately. A sale of both estates for the payment of the aggregate amount of the liens cannot be had. The lien of the Trustees for balance of purchase money due upon the sale of the Pensacola and Georgia and the Tallahassee Railroads, and the lien of the State as trustee upon the Jacksonville, Pensacola and Mobile Railroad, examined and defined with reference to the parties to this suit. In this case the State admits the existence and priority of the lien of the Trustees. The case of The State of Florida vs. Anderson, et al., 91 U. S., 669, commented upon and followed, so far as applicable to the pleadings and proofs in this case.

3. The Circuit Courts under the Constitution of this State have no power to have a sale by their own officers by virtue of their decree of property in another circuit. Their authority in such cases does not ex-

tend beyond establishing the rights and defining the liens of the several parties before them.

4. A case should not be remanded with directions to modify a judgment therein made unless the proofs in the record authorize such modification. The existence of *bona fide* purchasers of State bonds is not established by the proofs in this case so as to authorize a final judgment, and this court should not direct any action to be had based upon the existence of such fact. This court is controlled by the record.

5. Where the evidence of a debt alleged to exist is a note, bond or mortgage, the party seeking a final decree based thereon should produce such note, bond or mortgage.

6. There cannot be in the same case two inconsistent final judgments covering the same subject-matter against the same defendant, based upon the same pleadings by the same plaintiff. The first judgment covering the subject must stand until it is reversed or opened and vacated.

7. Under the statutes of this State and the code practice as modified, an appeal lies from a final judgment by default, which is similar in its character to a decree *pro confesso* under the practice anterior to the code. Such judgment must conform to the matter of the pleadings of which defendant has notice, the plaintiff not being allowed to take such decree as he can abide by. A judgment by default, inconsistent with the case made in the original complaint and conforming to a new case made by an amended and supplemented complaint, filed three months after service of summons upon the defendant, without notice to him, is not authorized by the code practice as modified by statute in this State.

Appeal from the Circuit Court for Duval county.

This is an action under the Code.

Duval county, in which this cause was brought in the Circuit Court, is in the Fourth Judicial Circuit. The judgment of April 2, 1874, for $661,845.55, mentioned in the opinion, is in favor of the Trustees of the Internal Improvement Fund of Florida for the balance of purchase money of what were March 20, 1869, the Pensacola and Georgia Railroad and Tallahassee Railroad. These roads were sold by the Trustees of the Internal Improvement Fund March 20, 1869, under the provisions of the internal improvement law of Florida. (Chapter 610.) These roads were knocked off

'710 • SUPREME COURT.

Trustees I. I. Fund v. J. P. & M. R. R. Co. et al.—Argument of Counsel.

to F. Dibble and associates, who never paid the $572,000 of the purchase money. The State bonds mentioned in the opinion are those issued to the J., P. & M. R. R. Company under the acts of the Legislature of Florida providing for "Perfecting the Public Works of the State," being Chapters 1716 and 1731, Laws of Florida.

For a proper appreciation of the opinion of the court in this case, it is necessary to read the cases of Holland vs. The State of Florida, et al., and The State of Florida, et al. vs. The Florida Central R. R. Company, et als., in 15 Fla., commencing respectively on pages 455 and 690.

The other facts are stated in the opinion of the court.

*James M. Baker* for Appellants.

The bill in this case was filed for the purpose of enforcing a claim of the Trustees against the said defendant company due on purchase of road.

The Central Railroad Company was made defendant, though not responsible for the claim. The State was made a party complainant, but without having any legal or equitable right of action.

The first decree was entered against the J., P. & M. R. R. Co. for the said purchase money. A second decree was rendered in same suit against the J., P. & M. Railroad Company for interest claimed to be due on mortgage bonds held by the State in which the Trustees had no interest.

In the same decree bonds of the Pensacola and Georgia R. R. Co. are decreed to be the property of the Trustees and are ordered to be cancelled. In the same suit or action a decree was also rendered against the Florida Central Railroad Company for alleged interest due the State on certain other mortgage bonds—a decree in which the said Trustees had no interest.

Where the plaintiffs have no common interest but assert

distinct and several claims against the same defendant, the bill is multifarious. Story Pl., §279 and notes.

The complainant in this bill seeks relief in respect to matters which are, in their nature, separate and distinct and is multifarious, and should be dismissed even without objection from defendant. Story Pl., §271 and notes.

It is multifarious to mix up different proceedings requiring different decrees. Alger vs. Scoville, 6 How., N. Y., 131; 9 How., N. Y., 113; 8 How., N. Y., 73; Mattair, et al. vs. Payne, et al., 15 Fla., 682.

When a joint claim against two or more of the defendants is joined with a separate claim against one of the defendants, the bill is multifarious and cannot be amended. 6 Paige, 18; 5 Paige, 65.

The code authorizes several causes of action to be united when they arise out of the same transaction, or transactions connected with the same subject. Code, 39.

The Circuit Court of Duval county had no jurisdiction over the 103 bonds of the Pen. & Ga. R. R. Co. and Tallahassee Railroad Company, adjudged in said decree of 1875 to be the property of the Trustees of the Internal Improvement Fund.

Said bonds appear from the testimony in the case to have been at date of said decree in the possession of Doggett, Master in Chancery in the case of Vose vs. The Trustees, in the U. S. Circuit Court. Said bonds were filed in said court by T. Mayhew Cunningham, who was in possession and could not be divested of his right of possession by a decree of a State court, in a suit in which he was not even a party.

The said bonds were not in the hands of Papy when enjoined, and it does not appear that they were ever within the control or jurisdiction of said Circuit Court of Duval county.

It does not appear that the said bonds were ever deliv-

ered to either M. S. Littlefield or to the J., P. & M. R. R. Co., or that they were ever in the possession or control of either of them. That if any agreement existed between them as alleged, it was not carried out, and it never was in their power to do so. So that the Trustees acquired no right to the possession or control of said bonds under said agreement.

The supplemental bill was filed in this case on the 24th day of March, 1874, after the defendant's answer was stricken out, which contains the only prayer for judgment against the defendant for interest on bonds. In resistance of such judgment the defendant had a right to answer or demur.

When the amended bill was filed, only $120,000 of the coupons of the company was claimed to be due. The record shows that more than that amount thus claimed had been paid by the taking up and paying the coupons by the State bonds. At the commencement of this suit there was no default in payment of interests and none claimed. No demand can, therefore, be allowed for a claim arising against defendant after the commencement of the suit.

The bonds issued by the State were null and void and constituted no consideration for the Company's bonds, and the *State* held no valid claim against the company arising therefrom.

The complainant does not demand any specific amount of damages, but simply alleges a default in payment of interest for more than twelve months, and prays a seizure and sale of defendant's road under provisions of the act of Oct. 28, 1870.

That the judgment is inconsistent with the allegations and prayers of the complainant, both as to the interest on bonds and the one hundred and three thousand bonds. That the final judgment of April 2, 1874, exhausted all claim for further relief under the pleadings. All relief not therein

granted was denied, and became and was *res adjudicata* as to the complainants.

If the judgment rendered August 20, 1875, was regular and valid, then under the pleadings in the case the complainants are entitled to proceed and take two other judgments against the same parties, one for sinking fund claimed to be due, and another for the over issue of bonds alleged.

*W. G. M. Davis* for Appellees.

The appellant seeks to reverse so much of the judgment of the court below as adjudged the one hundred and three bonds in the pleadings mentioned to be delivered to the trustees (appellees) to be cancelled, and further ordered and decreed the defendant company (the appellant) to pay to the State the interest then due on the bonds held by the State of Florida, issued by the defendant company, (the appellant) and that the State held a statutory lien for the payment of such money on the railroad franchise and property of said company.

The trustees, defendants, insist that the judgment in their favor is correct, for the following reasons:

1st. It appears from the testimony that Geo. W. Swepson was appointed the agent of the trustees to purchase for them the Pensacola & Georgia and Tallahassee railroad bonds, of which the one hundred and three bonds were part; that he failed to make such purchase himself, but made a contract with Littlefield by which he sold to him a large amount of stock in the J., P. & M. and Florida Central Railroad Companies, in consideration of which Littlefield, among other things, agreed to perform the contract of Swepson before stated. In pursuance of such agreement, or in fulfillment thereof, Littlefield purchased from Edward Houstoun the one hundred and three bonds. It is material to note, in this connection, that it appears from the agreement made

between Littlefield and Houstoun, which provided for the payment by Littlefield to Houstoun for these bonds and certain stocks, that Littlefield gave a draft signed by himself as President of the J., P. & M. Company on S. W. Hopkins & Co., who were the agents of the company for the sale of four million bonds, and that Hopkins paid the draft out of the money for which the bonds were sold by them.

The answer of M. D. Papy, and the testimony of Littlefield, show that the statement above made as to the contract of Swepson for the purchase of the bonds by Littlefield and the mode of payment is correct. The evidence of Littlefield sustains the statement.

2d. So far as Swepson's obligation given to the trustees is concerned, it matters not whether he received the sum of money mentioned in this receipt or not—he was estopped to deny the receipt of the money. The trustees accepted his obligation, he recognized it as binding when he made the sale of the stock to Littlefield, and bound Littlefield to perform the obligation, and to purchase the bonds and deliver them to the trustees for cancellation.

Littlefield must be treated, when making the purchase, as acting in performance of his contract, and the trustees must be held as entitled to the benefit of the purchase. The court below rightly treated the purchase in this light. So far as Littlefield was corncerned, he became a trustee of the bonds, and was bound to deliver them to the trustees, the appellees. He was estopped to deny such application of the bonds as the court decreed.

Littlefield, in his testimony, professed to be unable to decide whether the bonds belonged to him or to the J., P. & M. Company. The company did not, in the course of the proceedings, set up any title to the bonds. It is true that the purchase-money was paid by Littlefield out of money that stood to the company's credit in the hands of Hopkins & Co.; but as the company was bound by its contract, un-

der its charter and by its written obligation, to remove all encumbrances, if any there was, upon the property which it pledged for the payment of the four million bonds, it was estopped from purchasing the bonds with the view to hold and assert them as a superior or prior obligation to that which it entered into when it received the State bonds so-called.

A court of equity would not allow the company to buy up and keep on foot obligations, with the intent to use them to the prejudice of those in whose favor the statutory lien on the company's property was created by its act.

The fact that the one hundred and three bonds were paid for with the money derived from the sale of the State bonds so-called, would compel any court of equity to decree what the court below did decree.

If the views thus presented are well founded in law and sustained by the evidence, the decision in the court below must be affirmed; or, if not formally correct, in the judgment of this court, a judgment must be pronounced here adjudging the one hundred and three bonds not to be the property of Milton S. Littlefield, nor of the J., P. & M. Company, and not a charge on any fund in the hand of the trustees. As the bonds were not in the actual custody of the Duval Circuit Court at the time when its judgment was rendered, nor in the possession of Littlefield, nor of the J., P. & M. Company, as no decree could be rendered directing their delivery to the trustees, by said defendants, a decree settling rights of the trustees and of Littlefield and the company, in respect of the bonds, was proper to be made by the court.

M. D. Papy, in whose custody the bonds were at the commencement of the suit, was made a party, and enjoined from parting from the possession of the property. He answered and disclaimed title in himself, and set up an agreement which is found in the pleadings. He was bound by the de-

cree. It is important to the estate of Papy, as well as to the trustees, that the judgment should be affirmed in order that the trustees may be able to take proceedings in the courts of Georgia and the Circuit Court of the United States to obtain the possession of the bonds. An affirmance of the judgment settles the title to the bonds in favor of the trustees as against Littlefield, who bought them, and the J., P. & M. Company, which paid the purchase-money. The claims of all persons who set up title under Littlefield, such as Bayne, Rogers and Clingman, can easily be disposed of, because of their knowledge that the bonds were paid for, not with Littlefield's money, but in the manner stated.

The appeal in respect to that part of the judgment of the court below which decreed interest against the J., P. & M. Company, and that it was due to the State, and which declared its property to be subject to a lien for its payment, was clearly correct as the law and the facts stood at the time of the rendition of the judgment.

1st. The answer of the company which was declared frivolous was clearly so. It admitted that the contract stated in the complaint existed, admitted the right of the State to recover on the contract; but set up payment in part of portions of the interest, (which credit, so claimed, is allowed in the decree.)

It was apparent, from the answer, that the company had not complied strictly with the forms of its contract. It had never made any payment to the State directly. The judgment allowed a credit of coupons of the State bonds, which the company paid by diverting a portion of the money for which said bonds were sold, instead of applying such bonds to the repair of the railroad. The court saw in the answer the intent to raise a frivolous question as to the 3riht of the State to claim interest of the company before payment of interest on the State bonds. Seeing this, the court correctly adjudged the answer frivolous, and decreed a performance of

the contract. It is apparent that the form of the decree needs to be modified, in view of the decision made by this court in the case of Holland vs. the State, so that the judgment may operate in favor of those who are, by that decision, declared to be the beneficiaries of the trust created by the act incorporating the J., P. & M. Company, the issuance to, and the sale by, it of the State bonds so-called. Whether it will be proper for this court to direct such modification of the judgment, or to make any other alteration to make it conform to the decision before mentioned, as well as to provide for further proceedings in the court below to enable it to give full relief to the holders of the State bonds so-called, this court will determine. It appears to counsel for appellees that there should be an entry in the cause in the court below, setting forth that the holders of the coupons on the State bonds so-called are entitled to the benefit of the decree for the payment of interest due on——————— day of —————— for which the judgment was rendered, and that the holders of similar coupons, which have become due since that time, as well as such as may hereafter become due, shall have the right to come in under the judgment, prove their claims, and have execution, so that, when the property of the company is sold under such judgment, the money arising from such sale shall be properly apportioned among those entitled to share therein.

Inasmuch as the judgment was rendered under the Code, as the property of the company is bound by the judgment, but is not within the Fifth Judicial Circuit, it may be proper that this court should, to avoid litigation, and to simplify the proceedings under the judgment, give directions as to the mode of execution. It is in the power of the court upon the appeal to make such provisions in respect to the matters last mentioned as to it may seem fit, and make a decree therefor. It may be proper to say, in case any question shall be raised as to the jurisdiction of the

court below over the subject-matter upon which it gave judgment, that the J., P. & M. Company and M. S. Littlefield appeared in the cause—therefore, both Littlefield and the corporation are bound by the judgment. There is no such assumption of jurisdiction over property not within the Circuit as occurred when Greeley was appointed receiver in the cause. The judgment is against the person; it is not *in rem*, and cannot be executed upon the property of the company, being outside of the Fifth Judicial Circuit, unless it is done by some proceeding in the court of another Circuit, or unless this court shall direct that the judgment may be executed in any Circuit by a referee appointed by the Duval Circuit Court. It is respectfully submitted to the court that some direction as to the practice to be pursued in this and other cases of like character should be established by the court, there being no statute which prescribes any rule on the subject. The power exists, and should be exercised, to make perfect the remedy—else the judgment will be a nullity, although the court had the power to render it.

Judge Maxwell, of the First Circuit, and Judge White, of the Second Circuit, sat in the places of the Chief-Justice and Mr. Justice Van Valkenburgh, who were disqualified.

Mr. Justice Westcott delivered the opinion of the court.

This is a case under the late Code.

Appeals from the judgment rendered herein are prosecuted by the Jacksonville, Pensacola and Mobile Railroad Company, and by Milton S. Littlefield.

The appeal of the Jacksonville, Pensacola and Mobile Railroad Company is from the judgment rendered against it in behalf of the State, as well as that rendered against it in behalf of the Trustees of the Internal Improvement

Trustees I. I. Fund v. J. P. & M. R. R. Co. et al.—Opinion of Court.

Fund. The appeal of Milton S. Littlefield is from the judgment rendered against him in behalf of the trustees.

We make no statement of the case in detail. Our views of the facts and of the case will appear as we treat and dispose of each appeal.

The decree in behalf of the State in this record is not by virtue of its relation of trustee for *bona fide* purchasers and holders of the bonds of the State of Florida exchanged with this company for its bonds and sold, but it is based upon the fact that the State of Florida has in possession the bonds of the Jacksonville, Pensacola and Mobile Railroad Company, upon which that company has failed to pay interest. The right of the State as trustee can exist only upon clear proof of the existence of *bona fide* purchasers of the State bonds. The State as the simple holder of the company bond is entitled to no judgment against the company. The fact which makes any equity operative in her behalf must exist in connection with the fact that the State holds the company bond. This court considered the general nature of the bonds which are the foundation of the State's claim here in the cases of Holland vs. The State of Florida, 15 Florida, 534, and the case of the State of Florida against The Florida Central Railroad Company, 15 Fla., 691.

In the case of Holland vs. The State of Florida we said, " A careful and strict examination of this statute will show that the State of Florida was to occupy two distinct and different relations to the holders of the State bonds and to the company. The first relation was that of primary debtor to the holder of the State bond under and by virtue of the obligation of this bond, and also of mortgage creditor of the company, under and by virtue of the bond of the company. The right of the State, viewed in this light, was to be simply that of a mortgage creditor of the road, and its liability to the holder of the State bond was that of a simple bond debtor. In this relation the holder of the State

bond was to have no security for his protection and payment, except the liability of the State in its own right, and its good faith and capacity ; the State, at the same time, as the result of this relation, being given for its own protection against this bond debt the right to become the purchaser at the sale of the road, and to pay for it in the bonds of the company. The other relation which it was to occupy was, in the language of the act, a trustee for the holders of the State bonds. In this relation the lien created by the statute was for the benefit of the holder of the State bonds. The lien of the statute and the company bond, viewed in this light, was for his benefit, and the property and franchises of the company were to be his security for payment; and as the company received his money and the State received nothing, the company was to be held to the obligation of common honesty in the matter of payment and satisfaction." This court in that case remarked further, " That the Legislature could not, under the Constitution, create the first relation of primary debtor, and that it would seem to be a consequence that such part of the statute authorizing the bond as provided for the State's protection against such liability as the Legislature presumed the State incurred, would fail and cease to be operative." This, we think, was correct. The clear result of the views expressed in that case prohibits the State from occupying the relation of a simple mortgagee entitled to a decree in its favor in that relation. We re-affirm what was there said.

The State of Florida in this case, in addition to its relation as trustee for the *bona fide* purchasers and holders of its bonds, has also a residuary interest in the Internal Improvement Fund, as well as an interest in its management and disposition through her agents, the Trustees.

The subject-matter of this action, so far as it is common to the Trustees of the Internal Improvement Fund and the State of Florida, is a line of railway extending from Quincy

to Lake City, with a branch to Monticello, and the line of railroad extending from Tallahassee to St. Marks. The Trustees claim a lien for balance of purchase money due upon a sale of the road from Quincy to Lake City and branch to Monticello, under a statutory mortgage bond of the Pensacola and Georgia Railroad Company. They also claim a lien upon the road from Tallahassee to St. Marks for the balance of purchase money due upon a sale of that road, under a statutory mortgage bond of the Tallahassee Railroad Company. The State as trustee claims in this suit only a subordinate lien upon these two lines of railroad, and, in addition thereto, the State claims a primary and first lien upon the railroad from Quincy to Chattahoochee as a part of the Jacksonville, Pensacola and Mobile Railroad. The question as to the character and extent of the right of the Trustees of the Internal Improvement Fund, the right of the State as having a residuary interest in such fund, and the rights and remedies of holders of bonds issued under the internal improvement act of 1855, were considered by the Supreme Court of the United States in the case of The State of Florida vs. Anderson, et al., 91 U. S., 667. The views there expressed are entirely applicable to the pleadings and proceedings in this action. We will not here repeat them at length, but will state simply our entire acquiescence in the views there expressed. Under this decision the right of the Trustees of the Internal Improvement Fund, as vendors, is to a sale of the road from Quincy to Lake City, to satisfy the balance of the purchase money due them upon the sale of that property, and as to the balance due on the sale of the road from Tallahassee to St. Marks, they have a right of the same character against that road. The State's right as trustee, in the event of proof of *bona fide* purchasers and holders of State bonds, is to what remains after satisfaction of these several liens upon these several pieces of property, if that sum is necessary to the payment.

46

of what is found to be due the State as trustee after due process of judicial examination.

The *rem* here in question, the property of the J., P. & M. Co., is not claimed by the plaintiff to embrace the line of road extending from Jacksonville to Lake City. This being so, no part of the property is in the territorial jurisdiction of the Circuit Court of the Fourth Judicial Circuit. That court, under the Constitution of the State, has no power to decree a sale by its officers of property not within its territorial jurisdiction. (15 Fla., 285.) The power of the Circuit Court, therefore, in this case did not extend beyond a decree establishing the rights and defining the liens of the State an. of the Trustees, as we have stated them. That court should have adjudged two liens existing in behalf of the Trustees. One as to the road from Tallahassee to St. Marks for the balance of the purchase money due thereon, the other as to the road from Quincy to Lake City for balance of the purchase money due thereon. In such a case the right of the vendor is to a sale of each road separately, on non-payment of what is due on it. He cannot sell both estates on non-payment of the aggregate amount of the liens, and any decree establishing the lien of the State should conform to the law upon this subject. 8 Eng. L. & Eq., 46; 10 Met., 172.

As against the J., P. & M. Co., the State had a further lien of the character given by the statute as to the road from Quincy to Chattahoochee.

In the case of the State, if the relation of primary debtor had been constitutional, to conform to the statute the court would simply have passed a decree establishing the amount of principal and interest due on the company bonds; the default of twelve months in the payment of interest; the amount of the State bonds outstanding, and would have made such decree as to sale as was authorized by the statute. When, however, the only right of the State is as trus-

tee, the court should conform to the right of the State in that relation as defined and fixed by the statute. This is a right to sale of the entire property, limited by the right of the Trustees as vendors as before stated, and an establishment by decree of the debt for the payment of which it was to be sold. Under the terms of the statute, upon a sale the proceeds were to be applied promptly and exclusively to the payment and satisfaction of the bonds issued by the State of Florida under the act. The bonds were not valid as a primary obligation against the State, but they were effective when held by *bona fide* purchasers, as showing who were the *cestuis que trust* under the statute.

The decree now before us establishes the debt of the company to the State, and a default of twelve months in payment of the interest due thereon, and passes what is a judgment *quod recuperet* for the interest. For these reasons this judgment in behalf the State must be reversed.

It only remains to consider what is the proper disposition to be made of the case of the State in view of the pleadings and proofs herein. Should the order be to dismiss absolutely or without prejudice to the right of the State as trustee, or should it be, as suggested by counsel for the State, to remand, with direction to modify, the decree, and for further proceedings in the court below to enable it to give full relief to the holders of the State bonds? We cannot direct a modification of the decree, among other reasons, because that can be proper only in the event that the proof justifies such order, and there is no such satisfactory proof here as should be required. The only proof in this record that there is a *bona fide* purchaser of a State bond in existence is this sentence in the testimony of Milton S. Littlefield: "I sold and delivered to S. W. Hopkins & Co. three thousand bonds of the State of Florida of $1,000 each, which were received in exchange for the railroad company's bonds, numbering from No. 7 to No. 3,000 inclusive." Under the

circumstances of this case the least that should be required is the production of these bonds and full proof of *bona fide* purchase and ownership. The better practice, where a debt is evidenced by a note, bond or mortgage, is to produce such note, bond or mortgage, and while in some cases such strictness may not be required and a smaller degree of proof may suffice to make a *prima facie* case, yet here, where the State is a simple trustee with a power of sale seeking a final decree, and where, if the bonds are in the hands of the J., P. & M. Co., never having been *bona fide* sold, they constitute no lien, (15 Fla., 725,) we cannot accept as proof upon which to base a decree the naked statement of the president of that company that he sold those bonds to a party who, this record discloses, was the agent of that company. There are also other suspicious circumstances which it is unnecessary to mention.

As to the suggestion in reference to calling in the holders of the State bonds. We have no satisfactory proof that there are such. We cannot, looking to this record, say that such is their wish, or a probability that such will be their act. These parties may claim that they have the right to disavow the act of the State in this proceeding; that they are not bound thereby, and will seek their remedies, and assert their own rights as they view them, elsewhere. Again, this action has been pending for over six years, and this record discloses no attempt of such persons, if any such there be, to come into this suit. While all this is true, and the strict rule of practice would justify an order of dismissal absolute, still we think we are justified in doing no more than directing the bill on the part of the State as against the J., P. & M. Co., so far as it claims a lien against said road, to be dismissed without prejudice to the right of the State as trustee to assert in a new suit a lien subordinate to the lien of the Trustees of the Internal Improvement Fund as to the several roads extending from Quincy to Lake

City with branch to Monticello, and from Tallahassee to St. Marks, and without prejudice to the right to assert in a new suit a general lien as trustee upon the other property of said company.

The State having joined as co-plaintiff with the Trustees in this suit, and having admitted their prior lien as to the road from Tallahassee to St. Marks and from Quincy to Lake City and branch to Monticello, and such lien having been established by the judgment of the Circuit Court with its consent, the order dismissing the bill should not leave that an open question.

The J., P. & M. R. R. Co. appeals also from that portion of the decree of August 20, 1875, wherein it is adjudged by the court that one hundred and three bonds, some of the Pensacola and Georgia Railroad Company and some of the Tallahassee Railroad Company, were the property of the Trustees of the Internal Improvement Fund as against said company, and that when recovered these bonds should be cancelled. · This record discloses that on the second day of April, A. D. 1874, there was a final judgment rendered against this company for $661,845.55-100.* This judgment was based upon the case made by plaintiff in the complaint and amended complaint in this action. For this sum this final judgment declares that the Trustees have a lien on all the property of the company owned by it at the commencement of the suit, as well as a lien upon all the railroad "situate between Lake City, Columbia county, Florida, and Quincy, in Gadsden county, and upon the branches thereof from Tallahassee, Leon county, to St. Marks, Florida, and to Monticello, in Jefferson county, and upon the iron, road-bed and depots thereon or connected therewith, from the 20th day of March, A. D. 1869." This decree was final. It ad-

---

* The J., P. & M. Company appealed in this case from this judgment, and the appeal was dismissed by the Supreme Court on motion of the Trustees of the Internal Improvement Fund, at January Term, A. D. 1878. —REPORTER.

judicated the rights of the parties; it embraced the one hundred and three bonds; it provided that the defendant company should have the right to credits upon the decree, and the Trustees should make credits to the amount of the principal of any of the bonds of the late Pensacola and Georgia Railroad Company and of the late Tallahassee Railroad Company which the said defendant company may tender for cancellation, the acceptance and cancellation being made discretionary with the Trustees. Without opening this judgment and without any additional pleadings by the Trustees in reference to the one hundred and three bonds, we find this decree of August, 1875, establishing the title of the Trustees to the one hundred and three bonds as against this company. This decree, as it recites, is based upon an agreement by the company to purchase and deliver the bonds for cancellation. The prior final decree adjudged that the Trustees had a lien on all the property of the company for this sum. The question, therefore, is whether this subsequent judgment of the court, inconsistent with a final judgment before made based upon no new pleadings, is not erroneous, the prior final judgment not having been opened or in any manner set aside. Under these circumstances this last judgment must be reversed. The two cannot stand together. A judgment that the one hundred and three bonds constitute, in the hand of the defendant company, no claim against the fund, is inconsistent with the judgment establishing a lien in favor of the Trustees for that sum, and from that judgment there is no appeal here. As to the matter in controversy, the judgment of April 2, 1874, was *res adjudicata*, until reversed or vacated. (35 Barb., 214.) There cannot be in the same proceedings two inconsistent final judgments against the same defendant, based upon the same pleadings by the same plaintiff. If, without opening or setting aside the first final judgment, a second inconsistent one can be entered, why cannot a third and fourth inconsis-

tent final judgment be entered? With such a rule there would never be an end to litigation.

This judgment of August 20, 1875, must be reversed as to the J., P. & M. Co., in so far as it adjudges the one hundred and three bonds to be the property of the Trustees of the Internal Improvement Fund, subject to be cancelled. This, however, to be without prejudice to any right which said Trustees may have, or to any application they may make to reform or change, upon proper proceedings, the judgment of April 2, 1874.

We next examine the appeal of Milton S. Litttlefield. Plaintiffs allege in their original complaint that "they have been informed and believe that Milton S. Littlefield has in his possession and control a large number of the first mortgage bonds of the said Pensacola and Georgia Railroad Company, for the payment of which the balance of said purchase money is, when collected, made applicable by law, and that the defendant, M. D. Papy, holds another large number of the last aforesaid bonds as the agent of the said Railroad Company, or of the said defendant, George W. Swepson, all of which said last mentioned bonds equitably belong to the Trustees of the Internal Improvement Fund."

The prayer of the original complaint was for judgment against the J., P. & M. R. R. Co. for the sum of $572,000 and costs, and for an injunction restraining M. D. Papy and Milton S. Littlefield from parting with the possession and from disposing of, or in any manner incumbering the bonds "now in their possession, custody and control, either as trustee or otherwise," until the further order of the court. There was an injunction awarded against Papy and Littlefield in accordance with the prayer of the bill, as to any of the "bonds of the Pensacola and Georgia Railroad Company."

The summons issued upon the filing of this complaint was served upon Milton S. Littlefield on the 20th of March, 1872.

There is no evidence in this record of any appearance by him. An amended complaint as called by the plaintiff, an amended and supplemental complaint as named by the court, was filed June 22, 1872. In this the Trustees alleged that the said Jacksonville, Pensacola and Mobile Railroad Company, or the said Littlefield, hold by purchase one hundred and three thousand dollars of the outstanding P. & G. & T. R. R. Co. bonds, purchased under an agreement that the same should be surrendered for cancellation to and by the said Trustees, and that while the J., P. & M. Co. is liable for the sinking fund, yet the said bonds are valueless in its hands or in the hands of its assignees. No notice of intention to file this complaint, or of an application for leave so to do, or of its being filed, was served upon the defendant Littlefield.

The record contains an acknowledgement by M. S. Littlefield of service of notice by the plaintiffs of their intention to apply for final judgment against him, and on the day named in this notice there was a final judgment, this final judgment reciting that defendant, Milton S. Littlefield, had been duly served with process in this action, had not interposed any defence thereto, adjudged as against him that the one hundred and three bonds of the P. & G. & T. R. R. Companies were the property of the Trustees, that the plaintiffs should cancel them upon receiving possession of them, and perpetually enjoining Littlefield from asserting any right or title to them.

From this statement of the case of appellant Littlefield, it appears that the judgment rendered against him was for default for want of "defence;" that the original complaint was filed March 22, 1872; that he was served with summons on the 20th of March, A. D. 1872; that on the 22d of June, A. D. 1872, an amended complaint was filed of which no notice was given him; that he never entered an appearance

in the cause, and that he received notice of intention to apply for final judgment against him.

Does an appeal lie from such a judgment in this State? Under the original text of the Code, as interpreted by the courts of New York, an appeal did not lie from a judgment by default. (4 Com., 315; 8 Barb., 351; Voorhee's Cod,e 668; ib., 665d.) Under the English system an appeal did not lie from a decree *pro confesso*, and such was the rule in New York, Maryland, New Jersey, and Vermont. (2 Smith's Chy. Practice; 54 N. Y., 27; 8 Wend., 219; 25 Wend., 245; 12 John., 493; 1 Beas., 353; 1 Bland, 12-35; 15 Vermont, 378.) In this State a defendant anterior to the Code could appeal from a decree *pro confesso*, and in one case it was held that the appeal would only bring up for review the proceedings prior to the default. (4 Fla., 11.) The difference in the rule as stated by the court was occasioned by the fact that in England and New York an appeal might have been taken from interlocutory orders and decrees, while in this State no such appeal could be taken. Having failed to take an appeal from an interlocutory order when it could be done, the party in the English courts was considered as acquiescing in the propriety of the decree, and a subsequent default would debar him from bringing any question in the cause before the appellate tribunal. Under our first statute, however, an appeal could only be taken from a final decree, and for this reason the court, contrary to the rule in England and New York, held that an appeal could be taken and that every question passed upon by the Chancellor, and the regularity of the proceedings therein prior to the default, could be reviewed. (4 Fla., 14.) This statute was afterwards modified (A. D. 1853,) and appeals from interlocutory orders were allowed. This court, in the case of Freeman vs. Timanus, (12 Fla., 403,) held that this last statute did not change the rule, as it provided that a postponement of the appeal until final decree should not be

held to be an acquiescence, and in that case the decree was reversed and the case remanded with directions to dismiss the bill. In that case also we held that under the statute regulating decrees upon bills taken for confessed, the court could not grant the decree asked unless such decree under the statute was proper and consequent from the matter of the bill. We also held that in making a decree in conformity with our statutes there was necessarily the exercise of judicial judgment, the plaintiff not being allowed to take such decree as he could abide by. (12 Fla., 403; Thomp. Dig., 457.) Section 202 of the Code, as amended by the act of January 27, 1871, provides that appeals may be taken "from all such interlocutory as well as final orders and judgments in like cases as appeals could be taken before the passage" of the act establishing the Code practice; and as an appeal could have been taken from a decree *pro confesso* before the Code, so now it can be taken from a like judgment since its enactment.

Upon such appeal we do not think that the appellant can do more than question the sufficiency of the case made by the plaintiff of which he has had notice. To this extent he has made default and to such extent must he suffer, but the plaintiff cannot take any judgment he pleases. The judgment must conform to the cause of action stated against him. (22 Wis., 438; 14 Wis., 16; 1 Cal., 97; 3 Scam., 349; 1 C. Green, 271; 6 Mass., 499; 1 Morris, 290; 4 R. I., 114; 3 Nev., 385; 9 Iowa, 201; 30 Ga., 503; 9 Paige, 322; 18 Ark., 209; 2 Ark., 26.) In this case the defendant Littlefield received notice of the original complaint; he did not receive notice of the amended complaint. If the original complaint sets up a cause of action, then a judgment conforming thereto will not be disturbed here. If, however, the original complaint sets up no cause of action, and the judgment is based upon the amended complaint of

which he received no notice, it is error and must be reversed.

Plaintiffs in the original complaint alleged " that defendant Littlefield had in his possession and control a large number of the first mortgage bonds of the said Pensacola and Georgia Railroad Company, for the payment of which the balance of said purchase-money is, when collected, made applicable by law." This allegation, instead of making a case against defendant Littlefield, sets forth plainly that he is entitled to a part of the moneys which the plaintiffs seek to recover. In the amended complaint, of which Littlefield received no notice, the plaintiffs alleged that the J., P. & M. Co. or Littlefield held by purchase one hundred and three of the outstanding P. & G. R. R. Company bonds, purchased under an agreement that the same should be surrendered for cancellation to said trustees. Upon this allegation the final judgment was based. Of this claim Littlefield received no notice. The amended complaint making it was filed three months after the original, without notice or without leave of the court. Under these circumstances this judgment must be reversed. Unless this is the rule, the plaintiff in a bill seeking a specific performance of some simple contract might, by an amendment without notice and without leave, change the bill into one seeking a foreclosure of a mortgage and have a decree for the sale of the entire estate of the defendant. It cannot be said that defendant has confessed a claim of which the record discloses no notice to him. His only protection in such cases is notice of the claim for which judgment is demanded, and the court should only grant a judgment when the record discloses this fact affirmatively. We do not think that either party should be prejudiced by this proceeding. While we doubt whether an order directing the bill to be dismissed as to defendant Littlefield would prejudice any right of the trustees against him, still to avoid any difficulty the order

will be for a dismissal without prejudice to any right which the trustees or the State may see proper to assert against him in any other proceeding. The following judgment will be entered in this case:

This cause having been submitted at a previous term of this court, after argument by counsel for the State of Florida and for the Trustees of the Internal Improvement Fund, the plaintiffs, as well as after argument by counsel for defendants, the Jacksonville, Pensacola and Mobile Railroad Company and Milton S. Littlefield, and the transcript of the record of the judgement aforesaid having been seen and inspected, it is considered by the court that there is error in said judgment as to the Jacksonville, Pensacola and Mobile Railroad Company, and as to the said Milton S. Littlefield; wherefore it is ordered, adjudged and decreed that said judgment be reversed as to each of said defendants, and that the case be remanded with directions to dismiss the bill so far as in behalf of the State as a holder of the bonds of the Jacksonville, Pensacola and Mobile Railroad Company as to said defendant, the Jacksonville, Pensacola and Mobile Railroad Company, without prejudice to the right of the State of Florida as trustee to assert in another proceeding against said defendants, or either of them, a lien subordinate to the lien of the Trustees of the Internal Improvement Fund as to the several roads extending from Quincy to Lake City, with branch to Monticello, and from Tallahassee to St. Marks, and without prejudice to the right of the State of Florida to assert in a new proceeding a general lien as trustee upon all other property of the Jacksonville, Pensacola and Mobile Railroad Company, and without prejudice to the right of the plaintiffs, or either of them, to reform or change, upon proper proceedings, the judgment entered in this case on the second day of April, in the year of our Lord one thousand eight hundred and seventy-four, and without prejudice to any right which the plaintiffs, or

either of them, may see proper to assert against the defendant, Milton S. Littlefield, in this or any other proceeding; and for such other proceedings as are conformable to law and consistent with the opinion and judgment of this court in this cause. It is further considered that defendants recover of the plaintiffs, the Trustees of the Internal Improvement Fund, the costs of their proceedings by them expended in the Circuit Court of Duval county and in this court subsequent to the judgment of April second, in the year of our Lord one thousand eight hundred and seventy-four, so far as they arise out of the claim of the plaintiffs, Trustees of the Internal Improvement Fund, of and to the one hundred and three bonds of the Pensacola and Georgia and Tallahassee Railroad Companies taxed at the sum of ———— dollars and ——— cents in favor of the defendant, the Jacksonville, Pensacola and Mobile Railroad Company, and at the sum of ———— dollars and ——— cents in favor of defendant, Milton S. Littlefield. It is further considered that the costs expended by the defendant, the Jacksonville, Pensacola and Mobile Railroad Company, in this behalf, in connection with the claim of the State of Florida, be taxed by the Clerk of this court as against the State of Florida, and that a statement thereof be filed in the papers in this cause.