CATHARINE HART, EXECUTRIX OF THE LAST WILL OF OS-
SIAN B. HART, DECEASED, ABEL S. BALDWIN, PARAN
MOODY, CALVIN L. ROBINSON, WILLIAM P. MARVIN,
ADMINISTRATOR DE BONIS NON OF THE ESTATE OF H. H.
HOEG, DECEASED, AND OZIAS BUDDINGTON, APPPELLANTS,
VS. THOMAS E. STRIBLING AND HIS WIFE, MARY E.
STRIBLING, APPELLEES.

1. An appeal from a decree *pro confesso* absolute can be had under the
   practice in this State, and upon appeal, if the decree is not
   justified by the bill, the decree should be reversed.

2. The bond which the law authorizes a Judge to require as an "addi-
   tional" bond in case of sale of the real estate of a minor by his
   guardian is not primary in its character. It is subsidiary and
   auxiliary and no suit can be maintained upon it until the penalty
   of the original bond is exhausted.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*Geo. P. Raney* and *Fleming & Daniel* for Appellants.

*J. E. Hartridge* and *W. B. Young* for Appellees.

MR. JUSTICE WESTCOTT delivered the opinion of the
court:

This is the second time this case has been before this
court. The first appeal was taken by Stribling and wife
from an order granting a motion to open a final decree *pro
confesso* against Catharine Hart and the other appellants
above named. 20 Fla., 235. The order opening the de-
cree was there reversed. The present appeal is taken by
Mrs. Hart and the other persons above named as appellants,
from the final decree allowed to stand against them by the
action of this court upon appeal.

The decree was a final decree *pro confesso* absolute under the rule as will be seen by the statement of the case as heretofore reported. 20 Fla., 235.

The first question which arises here is, to what extent the proceedings of the court are reviewable upon an appeal from such a decree, as it is well established in this State that such an appeal may be had. Betton vs. Williams, 4 Fla., 11 ; Mogin vs. Filor *et al.*, 4 Fla., 203 ; Freeman vs. Timanus, 12 Fla., 404 ; Trustees of the I. I. Fund vs. J. P. & M. R. R. Co. *et al.*, 16 Fla., 730 ; Stribling and Wife vs. Hart's Executrix *et al.*, 20 Fla., 235 ; Marks vs. Baker, 20 Fla., —. The rule as established by these cases in this State is that upon such an appeal the proceedings prior to the default may be examined and if there be ground of appeal or error this court may reverse the final decree ; that after such default the proceedings are *ex parte ;* in other words, that no notice of motions or other proceedings, such as reference to master, or allowing time to file exceptions to reports, are necessary. The defendant in decree has, however, the right upon motion and affidavit in the Circuit Court to set the decree aside, " or enlarge the time for filing the answer," if such motion is made within twenty days after the rendition of such decree. As in this case no such motion was made, the question whether the action of the court upon such motion is reviewable here by appeals does not arise, nor do we think this question has ever been determined by this court. Not only may the legality of such proceedings prior to the default be examined upon appeal, but we have also held that the decree and bill may be examined to ascertain if the decree is warranted by the case made by the bill. Our inquiries, therefore, are limited in this case to two general questions. Was there illegality in the proceedings anterior to the default ? Is the decree here rendered consequent upon the matter of the bill and war-

ranted by the case made by the bill? Upon the former appeal we held the proceedings anterior to the default to be legal. For the nature of these proceedings and our views as to their legality, see the opinion rendered upon that appeal. 20 Fla., 235. We have leit, therefore, here the second question alone to determine. What is the case made by the bill, and what is the final decree?

Stribling and wife sue Mrs. Hart, executrix of O. B. Hart, and the other named appellants.

O. B. Hart was the guardian of Mrs. Stribling, his niece. Moody, Baldwin, Robinson, H. H. Hoeg and Ozias Buddington were sureties upon bonds of O. B. Hart, guardian.

Hart with Moody and Baldwin gave a joint and several bond in the sum of $8,000 conditioned " that if the said Ossian B. Hart shall, as guardian of said minor, faithfully preserve the estate of said minor, and shall, annually, on the first Monday of April in each and every year during the continuance of his guardianship of said minor, file in said court an inventory of said minor's estate, its profits and disbursements, and shall make or cause to be made a just and true account of his administration of said minor's estate when required and all the rest and residue of the goods, chattels and credits which shall be found remaining upon said guardian's account, the same being first examined and allowed by said court, shall deliver and pay to such person or persons as the said court by its order and decree shall appoint and direct." This *general* bond is dated October 2, A. D. 1861.

Plaintiffs allege that Hart, as such guardian, received "a large amount of personal property," and also "considerable sums from the rental of the lands" of his ward.

Hart, as guardian, under an order of sale of County Court of the 25th July, 1867, received as the proceeds of such

sale of lots of his ward, twenty-five hundred dollars. He gave, on August 5, 1867, under the order of court an additional bond in the sum of $3,000, with Moody and Robinson as sureties, conditioned to " truly and faithfully apply the moneys arising from such sale to the support, maintenance and education of said minor."

Under an order of the Judge of the Fourth Judicial Circuit, of the 27th July, A. D. 1868, Hart sold other lots of his ward, realizing the sum of $750. He gave no bond at the date of this sale for this.

Under a subsequent order of the County Court of the 6th September, 1869, Hart, as guardian, received $4,295, proceeds of sale of certain other lots sold under the statute authorizing such sale. Hart, with H. H. Hoeg and Ozias Buddington, as sureties, gave bond in the sum of $5,000 on the 6th September, 1869, to " well and faithfully apply the proceeds of the sale of the real estate mentioned in the order of the County Judge of this date," September 6, 1869, and also the real estate described in the order of said County Judge, of date July 27, 1868, " to the use and benefit of the said minor." We presume that there is an error here in making up this record, as no order of the *County Court* of the 27th July, 1868, is alluded to in the bill. Plaintiffs, in their bill, recite the sale of another lot for $400. We can find no special bond covering this sum, and no allegation of its existence is in the bill.

On the first of August, A. D. 1867, and each year thereafter, up to and including June 1, A. D. 1871, the guardian filed accounts showing his receipts and disbursements. This account showed a balance due his ward of $3,646. He has never rendered any account since that time, and has paid only the sum $62, of the amount due her. The bill recites the death of Hart and Hoeg, the appointment of

Mrs. Hart, executrix, and the appointment of Marvin, as the administrator *de bonis non* of Hoeg's estate.

Plaintiffs pray a general decree against such of the makers of the several bonds as are alive, and against the legal representatives of such makers as are dead, and for alternative relief.

The decree rendered upon this bill is a joint decree against all the appellants for the general balance due upon the guardian's account and interest. The court awards execution against the executrix of the guardian for the entire amount of the decree, and upon the return of this execution, unsatisfied in whole or in part, directs execution to issue against the other parties for such sum ; the parties to be liable as follows : Moody, to the amount of the two bonds executed by him as surety, viz : $8,000 and $3,000 ; Baldwin, to the extent of the penalty of the bond executed by him, viz : $8,000 ; Robinson, to the extent of the penalty of the bond executed by him, $3,000 ; Buddington and Marvin, as Hoeg's administrator, to the extent of the penalty of the bond executed by Buddington and Hoeg, viz : $5,000. The rights and liabilities of the sureties upon the several bonds as between themselves were reserved under the decree.

There are two statutes in this State which regulate and control the matter of bonds by guardians, so far as it is involved in this case. One is the statute fixing the nature of the general bond of the guardian ; the other is the act regulating the conditions of sale and the character of the bond to be given upon sales of real estate of infants made by their guardians.

The first statute, after granting to the County Courts of this State power to take full cognizance of complaints of wards against guardians, authorizes the judges of such courts to require such security from them as is necessary.

In other words it invests them with a general and large discretion as to the nature, the condition, and penalty of such bonds. The second statute and its amendment gives the courts the power to authorize a sale of the real estate of minors, and is accompanied by a proviso that the judge shall require "such additional bond as in his discretion may seem to be necessary to protect the interests of the infant." We think the liability of sureties under these bonds must be determined by the language in which the contract is written, because the statute certainly gives full authority to the courts to require such bonds, and the parties must be bound by their contract as it is written and as they have made it. We do not propose by this to say anything in respect to the liability here, in case these bonds did not conform to the statute, a subject discussed in argument, because we are clearly of the opinion that they do come within the statute. If this be so, then the general bond here given clearly embraces all money of the ward which the last accounting shows was in the guardian's hands. Again, the bond to be given for the proper accounting for the proceeds of the sales of the minor's real estate under the express terms of the statute is "such additional bond as in his" (the Judge's) " discretion may seem to be necessary to protect the interests of the infant." " Additional " to what? Certainly to the general bond already existing. The statute which authorized the sales under which the moneys came to the hands of the guardian was in existence when the sureties signed the general bond, and such power and duty was an incident of his trust. It appertained to the general management of the estate of his ward. It is not denied here that he received this money and upon its reception he and his sureties upon his general bond became accountable for it.

Under the authorities no suit can be maintained upon

these additional subsidiary and auxiliary bonds until the penalty upon the primary and original bond of the guardian is exhausted. Salyer vs. The State, 5 Ind., 206; Lessee of Goforth vs. Longworth, 4 Ohio, 127; Salyers vs. Ross, 15 Ind., 133; Clarke vs. West, 5 Ala., 129. Under statutory provision of like character with those of this State it has been held: 1. That a bond of this character renders its obligors responsible for the proper application by a guardian of the assets derived from the sale of real estate. 2. That the statute in authorizing such "additional bond" as the Judge should require "evidently conferred on the court a discretionary power, and when in its opinion the original administration bond was sufficient to secure a proper application of all the assets· belonging to the estate, including those to be produced by the sale of real property, further security would not be required. 3. That no suit could be maintained upon the additional bond until the penalty of the original bond was exhausted."

What disposition must be made of the case?

While the securities upon the first bond might not have seen proper to resist a joint claim, such as is here made by the bill, in view of the fact that they might in such relation have had contribution from their joint obligors if they were so found to be, yet here, where the case is a different one, is one of primary liability upon their part, they should be allowed to make a defence. As to the sureties upon these secondary and auxiliary bonds, their liability is only conditional upon a failure to recover upon the original bond. No effort to recover upon, no failure to realize from, no exhaustion of the penalty of the original bond, is here alleged. There is consequently no cause of action against the sureties on these bonds set up in the bill, and for that reason they have a right to a dismissal of the bill as to them, unless plaintiffs, by amendment, make a case. This

the whole proceeding shows to be impossible, and the result is as to them that the bill must be dismissed. As to the obligors upon the original bond the suit will be dismissed unless by amendment a case of primary liability on their part is made, to which new case they will have a right to make defence.

There will be judgment accordingly.