JAMES L. CLARKSON, APPELLANT, VS. LOUDERBACK, GILBERT & CO., APPELLEES.

1. If a final decree is not so joint as to require all the defendants to join in an appeal therefrom, those entering a separate appeal can not complain of errors only prejudicial to others who refuse to join in the appeal.

2. An appeal may be taken after a final decree based upon a default has been entered, and upon such an appeal the legality of all proceedings prior to the default may be enquired into. After a default regularly taken has become absolute, the proceedings are *ex parte* and a defendant can not object to mere irregularities therein, but the final decree must be proper and such as the complainant is entitled to take on his bill.

3. Where all the allegations of a bill upon which relief is predicated are expressly admitted no proof is necessary to sustain the bill.

4. Under the act of 1885, Chapter 3611, mechanics and all other persons performing labor upon, or furnishing materials for the construction or repair of any building have a lien thereon, and the interest of the owner in the lot or land upon which the building stands to the extent of the value of any labor done or material furnished, or for both, and no lien or notice of lien was required to be filed in any office.

5. The liens created by the act of 1885, Chapter 3611, had no existence at the common law and are the creatures of statute, but there is nothing in the act referred to prohibiting their assignment and its purpose is better subserved by giving to such liens the character of assignability.

6. No particular words are necessary to constitute an assignment of the lien claim, and if the intent of the parties to effect an assignment is clearly expressed it will be sufficient to accomplish the purpose.

7. A statement claiming a mechanic's lien for building a house described the property sought to be charged, gave the name of the owner who employed claimant to erect the building and the amount due for the same, was assigned by the claimant to third parties who filed a bill to enforce the lien against the owner and another party alleged to claim some interest in the property by reason of a subsequent lien, but that it was sub-

ordinate to the lien sought to be enforced; the owner admitted the amount to be due on the building and that the paper was drawn by him for the purpose of securing a lien thereon to the extent of the amount stated; decree *pro confesso* was regularly entered against the party alleged to have a subordinate lien, and thereupon final decree was rendered adjudging that the house and lot be sold to pay the amount admitted to be due, and that the interest of the party in default, if he had any, was subsequent and subordinate to the lien of complainants; *Held*, On appeal by the party alone against whom the default decree was entered, that the assignment of the lien to complainants was not open for consideration and in the absence of any error in the record against the appellant the decree should be affirmed.

Appeal from the Circuit Court for Osceola county.

### STATEMENT.

Appellees, John A. Gilbert, W. S. Louderback and Edwin S. Sweet, as partners under the firm name of Louderback, Gilbert & Co., filed a bill against Andrew J. Rose and appellant James L. Clarkson, and therein alleged that on or about the 9th of day of December, 1886, defendant Rose applied to one E. W. Sigsbee, a contractor, builder and furnisher of materials, to build for him, Rose, a dwelling house on premises hereinafter named, and thereupon Sigsbee and Rose entered into a verbal contract with respect thereto. That on the 9th day of December, 1886, immediately after making said contract, and in compliance with the terms thereof, Sigsbee commenced work under the same on the following described premises, to-wit: begin at post on Mabbett street 120 feet west of the S. E. corner of Block W, of H. A. Mathews' addition to the town of Kissimmee City, running thence west $52\frac{1}{2}$ feet thence north 295 feet to Summer street, thence east $52\frac{1}{2}$ feet, thence south 295 feet to Mabbett street, to place of beginning, the said Rose being at the time

of making the contract, and at the time of filing the .bill, the owner of said premises. That Sigsbee, in compliance with the contract, did erect and finish for Rose a dwelling house on said premises, and did furnish all necessary materials and labor for that purpose, and did in all respects comply with the terms of said contract. That immediately after the completion of said building, on or about the 22d of April, 1887, Rose accepted the said building and took possession thereof. That upon accepting said building, Rose acknowledged that he owed Sigsbee the sum of $832.19, and drew for him a lien upon said premises, for work and labor done and material furnished in building said house, and which lien was signed by Sigsbee in the presence of Rose, and acknowledged by Sigsbee before Rose, and was duly recorded in the office of the Clerk of the Circuit Court for Orange county (the premises being then situate in Orange county) on the 22d of April, 1887, in book "I," page 152, of liens, but that in describing the said land, Rose, by mistake, described the same as being in Block "M" of H. A. Mathews' addition to the town of Kissimmee City, and including the dwelling house of said Rose; whereas, in truth and in fact, the said work was performed and the building erected and the dwelling house of Rose was and is on the premises described in Block "W" of said addition, and not in Block "M," as set forth in said lien. That on the 24th day of May, 1887, E. W. Sigsbee, for a valuable consideration, assigned said lien to complainants, all of which will more fully appear by reference to the said lien attached to the bill as a part thereof, and marked exhibit "A." That complainants had frequently requested Rose to pay the said sum of $832.19, the balance due them as assignees. and holders of the said lien, but he had neglected and

refused to do so. That defendant James L. Clarkson has, or claims to have, some interests in said premises as mortgagee, but such interests, if any there be, have accrued since, and are subject to the lien placed upon said premises by Sigsbee, and assigned by him to complainants; that the said mortgages bear date December 15th, 1886, and recorded January 11th, 1887, and one bearing date February 9th, and filed for record February 17th, 1887; whereas the said lien of Sigsbee attached on the 9th day of December, 1886, and the defendant James L. Clarkson had full knowledge of the fact that Sigsbee was erecting on the premises hereinbefore first described a dwelling house for the said Rose. The bill prays for process, and also that the court decree the lien placed by Sigsbee and drawn by Rose on lot "M" of H. A. Mathews' addition to the town of Kissimmee City, be a lien upon the following premises, to-wit: begin at post on Mabbett street 120 feet west of the south-east corner of Block "W" of H. A. Mathews' addition to the town of Kissimmee City, and run thence west $52\frac{1}{2}$ feet, thence north 295 feet to Summer street, thence east $52\frac{1}{2}$ feet, thence south 295 feet to Mabbett street, to the place of beginning, as it was the intention of the said Rose and Sigsbee it should be; that an account be taken of what is due complainants from Rose, and he be decreed to pay the same, and in default of payment, the said premises be sold to satisfy such amount and costs, and that in case of sale the defendants and all persons claiming by, through or under them, since the commencement of the proceedings be forever barred and foreclosed of all right or equity of redemption of the said premises.

Exhibit "A," attached to and made part of the bill, reads as follows:

THE STATE OF FLORIDA, )
  COUNTY OF ORANGE. )

To Andrew J. Rose and all other persons to whom it may concern: Notice is hereby given that I intend to hold and inquire under the law, a lien against the property and land, including the dwelling house of the said A. J. Rose, situated in Block "M" of H. A. Mathews' addition to the town of Kissimmee City; Fla., for work and labor done and material furnished in the building and erection of said house, to the amount of eight hundred and thirty-two dollars and nineteen cents.                         E. W. SIGSBEE.

 In presence of A. J. Rose.

STATE OF FLORIDA, )
  ORANGE COUNTY. )

Before the subscriber personally came E. W. Sigsbee, to me well known, who acknowledged and declared that he signed the above instrument, and prays the same may be recorded.

(SEAL)                    A. J. ROSE, Notary Public.

Endorsed—Filed in the office of the Clerk of the Circuit Court of Orange county, Fla., this 22d day of April, 1887, and recorded in book I of liens, page 152. T. J. Shine, Clerk, by D. S. Shine, deputy. I hereby assign the within builder's lien to Louderbach, Gilbert & Co., to secure the payment of a promissory note given this the 24th day of May, 1887, for four hundred 17-100 dollars, which amount this assignment is given to secure; said note signed by E. W. Sigsbee & Son and due July 24th, 1887. (Signed) E. W. Sigsbee.

Subpœnas issued, service had on Rose, and Clarkson acknowledged service.

Rose demurred on the ground that there was no equity in the bill, and his demurrer being overruled, he filed an answer. He admits that in December, 1886,

he entered into a contract with Sigsbee by which the latter was to build for the former a dwelling house, and that the dwelling house was erected upon the following property, to-wit: beginning at a post on Mabbett street 120 feet west of the S. E. corner of Block "W" of H. A. Mathew' addition to the town of Kissimmee City, running thence west 52½ feet, thence north 295 feet to Summer street, thence east 52½ feet, thence south 295 feet to Mabbett street, to place of beginning, and the said Sigsbee furnished all the necessary material and labor for building said house. That at the time of making the contract, and at the time of filing his answer, he was the owner of said property. He also admits that after the completion of said house he accepted it and took possession thereof, and that he acknowledged and now admits that he owes E. W. Sigsbee the sum of $832.19. The drawing of the lien on the premises, the signing and acknowledgment of it and its record in the clerk's office for Orange county are admitted. He also admits that in describing the land he by mistake described the same as being in Block "M" of H. A. Mathews' addition to the town of Kiesimmee City; whereas, in truth and in fact, the work was done and material furnished and dwelling erected on Block "W" of said addition, and not on Block "M," as set forth in said lien. He further says that it may be true that the said lien was assigned to complainants, but as to such matters he was an utter stranger.

Decree *pro confesso* was duly entered against James L. Clarkson, and upon the case being set down for final hearing upon bill and answer and decree *pro confesso*, the court decreed in favor of complainants that the allegations of the bill were true, and that there was due from defendant Rose to complainants on the

lien assigned to them the sum of $832.19, with interest from April 22d, 1887, amounting to $99.86, and that the lien attached to part of lot "W" of H. A. Mathews' addition to the town of Kissimmee City, including the dwelling house of Rose, and described as beginning at a post on Mabbett street 120 feet west of the southeast corner of Block "W" of said addition, and running thence west 52½ feet, thence north 295 feet to Summer street, thence east 52½ feet, thence south 295 feet to Mabbett street, the place of beginning. Defendant Rose was ordered to pay said sums and costs and twenty-five dollars attorney's fee, and in default of payment the said premises were directed to be sold by the master in chancery at public sale, and the proceeds applied to such payment. It was also adjudged that the interest of James L. Clarkson, if he had any, accrued subsequent to and was subject to the lien of complainants, and that defendants were barred of all equity of redemption and claim in and to said premises. This decree was entered on the 12th day of November, 1888, and on the 18th day of the following month James L. Clarkson, by counsel, applied for a rehearing of the cause on the grounds that Rose was bound to defend for him, and that the latter accepted service with that understanding; that the facts set up are not true as to the mortgage on the 15th of December, 1886, as it was not executed to Clarkson, but to J. C. Sterling, who is not alleged to have had any notice; that the decree against Clarkson is not based upon any evidence, and Rose does not admit any fact upon which any such decree could be based; that no decree declaring the lien of Sigsbee, and assigned to complainants, to be superior to the liens of Clarkson, could be rendered without evidence of the facts set out in the bill, and no evidence was taken in

the case. The record shows that the court at first made an order that a rehearing be granted and that the master suspend proceedings to sell the property until the further order of the court. On a subsequent date the court adjudged that the decree of November 12th, 1888, be re-affirmed, and the master was directed to proceed under the same. James L. Clarkson alone appealed.

The errors assigned are, first, that the court erred in entering the final decree without proof of the allegations of the bill; second, the court erred in decreeing that a mechanic's lien could be corrected by bill in equity after the time for filing the lien had expired by law; third, the court erred in the decree, made on the petition of James L. Clarkson for a rehearing, reaffirming the final decree and ordering the master to proceed thereunder.

*E. R. Gunby*, for Appellants.

*Beggs* and *Palmer*, for Appellees.

MABRY, C. J.:

James L. Clarkson alone has appealed in this case, but as the final decree as to him only adjudges his separate lien, if he has any, on the property involved in the suit to be subordinate to that of appellees, we may consider the decree as not being so joint as to necessities the joinder in the appeal on the part of A. J. Rose. As the latter has not appealed, neither the sufficiency of his demurrer to the bill, nor any other question affecting his rights and interests, is involved here. Decree *pro confesso* was entered against James L. Clarkson, and appellees were entitled to such final decree against him as their bill warranted. An ap-

peal may be taken after a final decree based upon a default has been entered, and the rule is that upon such an appeal the legality of all proceedings prior to the default is open for review, and advantage may be taken of reversible errors apparent upon such proceedings. After default regularly taken the proceedings are *ex parte*, and the defendant can not object to mere irregularities therein, but while this is so, the final decree in the case must be proper and such as the complainant is entitled to take on his bill. Hart vs. Stribling, 21 Fla. 136; Garvin vs. Watkins, 29 Fla. 151, 10 South. Rep. 818; Lenfesty vs. Coe, 34 Fla. 363, 16 South. Rep. 277. It is not claimed, nor does it appear, that there was any irregularity in the proceedings up to the entry of default against appellant. The record shows that the decree *pro confesso* was duly entered against him.

The first assignment of error is, that the court erred in entering the final decree without proof of the allegations of the bill. No proof was necessary to sustain any of the allegations of the bill, even against A. J. Rose, for the reason that he expressly admitted every one to be true, except one, and that was not denied, and as to appellant, all the allegations were adjudged to be true by the decree *pro confesso*. The testimony of any number of witnesses sustaining the allegations of the bill would not have made it more conclusive against him. So, there can be no merit in the assignment that the court erred in entering the decree without proof of the allegations of the bill.

The third assignment of error may be briefly disposed of in this connection. The brief of counsel for appellant does not point out any error of the court in the ruling on the application for a rehearing, and under the rule we might omit any reference to this rul-

ing. The same status of the case existed on the rehearing as when the first decree was rendered. Appellant was under default, and, in fact, when the rehearing was applied for the time for opening the default had expired, and it could not then have been opened if an application for that purpose had been made. Two of the grounds alleged for a rehearing embraced new matter, which, if available to appellant for any purpose, should have been urged in proper time to open the default or as a defense in an answer; and the third one is the same as the first assignment of error, that the decree was entered against appellant without any evidence to sustain the bill. No proof was necessary to sustain the averments of the bill, as they were confessed and established by the decree *pro confesso.*

The second and only other assignment of error is, that the court erred in decreeing that a mechanic's lien could be corrected by bill in equity after the time for filing the lien had expired by law. This assignment of error and the argument of counsel in support thereof are based upon the erroneous view that the case is governed by the act of 1887, Chapter 3747. The act of 1885 (Chapter 3611) is the one that was in force when the lien claimed attached. By this act mechanics and all other persons performing labor upon, or furnishing materials for the construction or repair of, any building were given a lien separately and jointly upon such building and the interest of the owner in the lot or land upon which the building stood, to the extent of the value of any labor done or material furnished, or for both, and no lien or notice of lien was required to be filed in any office. Under the prior law it was necessary, in order to acquire a lien in favor of mechanics, that notice should be filed in the office of

the Clerk of the Circuit Court, within sixty days after the completion of the building, of an intention to hold a lien on the property, stating the amount of the claim and a description of the property on which the lien was claimed (McClellan's Digest, secs. 1, 4, pp. 721, 722), but no such notice of lien was required by the act of 1885. Barbour vs. Van Camp, 26 Fla. 40, 7 South. Rep. 162; Nutt vs. Codington, 34 Fla. 77, 15 South. Rep. 667.

Under the allegations of the bill before us there can be no doubt that Sigsbee had a lien as against Rose on the lot mentioned in block "W" for the dwelling erected thereon to the extent of $832.19, as it is conceded that Sigsbee built the dwelling for Rose on that lot, and that the sum mentioned was due for the building thereof. Every essential allegation to create a lien under the act of 1885 in favor of Sigsbee on the lot mentioned is contained in the bill and expressly admitted by Rose. Independent of the filing of any lien in the clerk's office, Sigsbee would have a lien under the facts stated and admitted.

There is no contention here on the part of counsel for appellant that the lien in favor of Sigsbee was not assignable, or that the paper filed in the clerk's office of Orange county as a builder's lien, and assigned by appellees, did not in law invest them with the same rights that Sigsbee had under it, and so far as the assignments of error and argument of counsel here go, the case might be ended; but on the record before us, and independent of the special objections referred to, one member of the court entertains the view that the decree against appellant can not be maintained, for the reason that appellees are shown to be assignees of the lien only as distinct from the claim upon which it is based, and as such they can not maintain the suit.

Some authorities hold that a lien given by statute in favor of mechanics is a personal right, and can not be assigned. This view seems to have been entertained somewhat from the fact that at common law a lien was not the proper subject of an assignment. We do not believe that this is the correct view as applied to the liens given by statute like ours of 1885. Such liens did not exist at the common law, and they owe their origin entirely to the statute. There is nothing in our statute of 1885 prohibiting the assignment of the liens thereby created, and its manifest purpose was to afford an effective and speedy remedy for the protection of mechanics and all other persons performing labor upon or furnishing materials for the construction of buildings. This purpose is better subserved by giving such liens the character of assignability, as otherwise their value as security for labor or materials furnished would be lessened, or reduced below the dignity of other contractual claims justly due. It is stated in the 15th volume of Am. & Eng. Ency. of Law, page 102, title "assignment of lien," that "the rule relating to the assignability of mechanics' liens is not well established. The weight of authority, however, is in favor of the assignability of the lien of a mechanic, and the right of his assignee to assert his claim in the same manner and to the same extent that the mechanic could." The authorities holding that such liens are assignable are based, in our judgment, upon sounder reasoning, and we adopt their view. Among them are the following: Skyrme vs. Occidental Mill and Mining Co., 8 Nev. 219; Mason vs. Germaine, 1 Montana, 263; Davis vs. Bilsland, 18 Wall. 659; Iaege vs. Bossieux, 15 Gratt. 83, S. C. 76 Am. Dec. 189; Kerr vs. Moore, 54 Miss. 286; Tuttle vs. Howe, 14 Minn. 145, S. C. 100 Am. Dec. 205. It is also true, as stated in Skyrme vs. Oc-

cidental Mill and Mining Co., *supra*, that "no partic-
ular words are necessary to constitute an assignment
of a debt. If the intent of the parties to effect an as-
signment be clearly established, that is sufficient."
Phillips on Mechanics' Liens (3d ed.), 55 (a).

The object of the present suit, as against A. J. Rose,
is to have a mechanics' lien, claimed to exist in favor
of one Sigsbee, and assigned by him to appellees, en-
forced as against a lot of land and a dwelling house
situated thereon, owned by Rose, and described as be-
ginning at a post on Mabbett street in Kissimmee City
120 feet west of the south-east corner of block "W" of
H. A. Mathews' addition to said town, and running
west 52½ feet, thence north 295 feet, thence east 52½
feet, thence south 295 feet to the place of beginning.
The bill alleges that under a contract with Rose, and
for him, Sigsbee erected a dwelling house on said lot,
and that upon the completion of the building and its
acceptance by Rose, he acknowledged that he owed
Sigsbee $832.19, and drew for him a lien on said prem-
ises for work and labor done, and material furnished,
in building the house, but by mistake Rose described
the lot as being in block "M," instead of block "W,"
as was the fact. The lien drawn by Rose and wit-
nessed by him, and made a part of the bill, states that
Sigsbee intends to hold and acquire under the law a
lien against the property in block "M," including the
dwelling house of Rose, for work and labor done, and
material furnished, in the building and erection of
said house, to the amount of $832.19. This is the case
made against Rose, and he expressly admits the alle-
gations of the bill in reference thereto. As to James
L. Clarkson, it is alleged that he claims to have some
interests in said lot as mortgagee, but such interests,
if any there be, accrued since and were subject to the

lien in favor of Sigsbee, and assigned to appellees; that said mortgages bear date December 15th, 1886, and were recorded on the 11th of the following month, and one bore date February 9th, 1887, and was filed for record on the 17th of that month; whereas, the lien in favor of Sigsbee attached on the 9th of December, 1886, and Clarkson had full knowledge that Sigsbee was constructing a dwelling for Rose on the premises sought to be subjected to the said lien.  The case against Clarkson is, that he was the holder of a subsequent and subordinate lien on said lot, and the allegations against him are established by the decree *pro confesso.* It was held in Maynard vs. Ivey, 21 Nev. 241, 29 Pac. Rep. 1090, that a "statement claiming a mechanic's lien is sufficient which describes the property sought to be charged, gives the name of the owner, the names of the persons by whom claimant was employed, and the total amount due after deducting all credits and offsetts."   It is evident that it was the purpose of both Sigsbee and Rose to perfect and fix a lien to the extent of $832.19 on the dwelling and lot on which it stood, for the labor and material in erecting the house, and it is also evident that they designed to perfect the lien in compliance with the law existing prior to the passage of the act of 1885, else they would not have prepared and filed a written notice as required by that law.  The written notice, or builder's lien as it is called in the assignment, states the amount of the claim and a description of the property, and while there was at the time no statutory direction that such notice should be given in order to secure a lien, it does embody a statement of a claim for work and and material in erecting the house, and also of an intention to hold a lien on the same and lot

43

674 SUPREME COURT.

James L. Clarkson v. Louderback, Gilbert & Co.—Opinion of Court.

to the extent of $832.19. The lien notice, as stated, was written by Rose and attested by him, and in his answer he admits that he owed the amount therein expressed, and wrote the notice for the purpose of securing a lien on the property in favor of Sigsbee. This written notice of lien for the amount stated was assigned by Sigsbee to appellees, and it is evident that the former's purpose was to invest the latter with all rights and interests which he had acquired under the notice. Any other construction of the assignment would do violence to its evident intent and object. As stated by the authorities, no particular words are essential to constitute an assignment of a debt, and it is only necessary that the intent of the parties, to accomplish such object, should clearly appear. If the question was open to us, in this case, it would be putting too narrow a construction on the notice or paper mentioned, as between Sigsbee and Rose, to hold that it did not sufficiently evidence a lien claim in favor of the former, and which he could enforce in his name; but the establishment of a lien against Rose and his property, as well as the assignment of the lien to appellees, is not open to us on this record.

Rose has not appealed, and appellant had no right on his appeal to reverse a decree affecting alone his co-defendant's interests. As was said in Witt vs. Baars, decided at this term, it is a fundamental principle in the administration of justice in all courts that all parties who are to be affected by the judgment of a court should be brought before it. Even in case of summons and severance, an appellant assigning errors will not be heard to complain of errors which are only prejudicial to parties who refuse to join in the assignment. Millsap vs. Stanley, 50 Ala. 319. In Fordyce vs. Shriver, 115 Ill. 530, 5 N. E. Rep. 87, it is said:

"Whether there was error in the rendition of the decree against I. B. Santee (one of the defendants below) is not directly before us as to him, as he has not applealed, prosecuted a writ of error, or assigned cross-errors upon the record. For the same reason we need not notice the observations of his counsel, that he was not a partner in this firm. It is admitted, however, in his answer that he was, and that can not be controverted now." The difficulty in the way of appellant is that he permitted the bill to be taken as confessed as to him, and under such default he stands as a party holding a subordinate lien on the property in question and can not be allowed under such default, and on his separate appeal, to question the decree obtained by appellees against Rose and his property. As against appellant there was no illegality or irregularity in adjudging, on his default, that his interests, if he had any, were subordinate to the rights of appellees established by the decree against Rose.

In view of the decree *pro confesso* against appellant, and his individual appeal, the only conclusion to be reached within the limits of the rules established in reference to such matters is, that the decree must be affirmed, and it is so ordered.

MR. JUSTICE LIDDON dissents.