GRACE ROBINSON MINICK v. RUFUS G. MINICK.

149 So. 483.

Division A..

Opinion Filed July 18, 1933.

Rehearing Denied August 10, 1933.

470

*Murray W. Overstreet*, for Appellant;
.*G. P. Garrett*, for Appellee.

BROWN, J.—This is an appeal· from a final decree of divorce in favor of the husband, the appellee in this case, and against the wife, and granting to the husband the custody of the child of said marriage, a boy of eleven years of age.

The bill, which was sworn to by the complainant, reads in part as follows:

"Your Orator, Rufus G. Minick, brings this his bill of complaint against the defendant, Grace Robinson Minick, whose true residence and home and place of abode is Kissimmee, Osceola County, Florida.

"And thereupon your Orator complains and says·that:

"1. Your Orator is a citizen and resident of the City of Kissimmee, Osceola County, Florida, and has been such. citizen and resident since August 10th, A. D. 1920.

"2. Until the desertion hereinafter charged, the defendant was a citizen and resident of the same place, *viz:* Kissimmee, Osceola County, Florida, and had been such citizen and resident since the same date, *viz:* August 10th, A. D. 1920. Defendant is thirty-five years of age. Defendant has, ever since October 1st, A. D. 1929, been, and still is, a non-resident of the State of Florida. Her present residence as particularly as is known to defendant, is Carson City, Nevada. There is no person in the State of Florida service of a subpoena upon whom would bind defendant. Complainant has made diligent search, inquiry and effort to ascertain defendant's present address."

Upon proof of publication duly filed, an order of publication was made and published, pursuant to the statute, Section 3111 R. G. S., 4895 C. G. L., and a copy posted and mailed to the defendant at Carson City, Nevada. Proof of publication was duly made and filed. A copy of the order for publication which had been mailed by the clerk to the defendant at Carson City, Nevada, was returned and filed in said cause together with the original envalope, with endorsements thereon as follows: "Not here—unclaimed." "Addressee notified at Minden, Nevada—no reply." "Unclaimed—return to writer." (Minden, according to the map, is a town near Carson City.)

A decree *pro confesso* was entered against the defendant for failure to appear, plead, answer or demur in said cause. Testimony was taken and final decree or divorce rendered in favor of the complainant as above stated. Shortly thereafter, the defendant entered an appeal from the final decree. Ten assignments of error were filed, among them being that the Court had erred in its final decree in finding that due service of process by publication was made upon the de-

fendant and that a decree *pro confesso* had been duly and regularly entered against the defendant.

It is well settled that the prosecution of an appeal from a final decree on the merits operates as a general appearance when the cause is remanded to the court below. Ortell v. Ortell, 91 Fla. 50, 107 So. 442, and cases cited therein. There was no special appearance to question the jurisdiction in this case as in the Ortell case. It has been held in several cases in this State that the prosecution of writ of error from what purports to be a final judgment of a circuit court operates as a general appearance in the case by the party taking the writ. Barwick v. Rouse, 53 Fla. 643, 43 So. 753; Busard v. Houston, 65 Fla. 479, 62 So. 483; Henry v. Spitler, 67 Fla. 146, 64 So. 745.

However, we are inclined to think that the service by publication was sufficient. It is true, the sworn bill alleges that defendant's "present residence as particularly as it is known to *defendant* is Carson City, Nevada," as above pointed out. This is obviously a typographical error in using the word "defendant" instead of complainant. But, even if this obvious typographical error be not self-correcting, which in connection with the other allegations we think it probably is, the allegation would have been sufficient in this particular if it had merely alleged that the defendant's present residence · is Carson · City, Nevada, omitting the words "as particularly as is known to the defendant." It does not appear that Carson City, Nevada, is such a large town or city as to come within the rule laid down in Ortell v. Ortell, *supra*. It was held in that case that an affidavit merely stating the residence of the defendant as being in the "City of New York in the State of New York" should have shown that the affiant was "specifying as particularly as may be known to affiant such

residence," or words to that effect, otherwise any complainant might make an affidavit stating merely that the defendant was a resident of New York City, or some other large city, without giving the street address, although the complainant might have been thoroughly familiar with such street address, with the result that the copy of the order mailed would not be at all likely to reach such defendant. It was therefore held that the affidavit in that case should either have given the street address of the residence of the defendant, or should have stated that the affiant had "specified as particularly as may be known to him" such residence of the defendant. But where an affidavit for order of publication, or a sworn bill, otherwise sufficient, alleges that the residence of the defendant is a small town or city, the absence of a street address or an allegation to the effect that the affiant has specified as particularly as may be known to him the residence of the defendant, will not, under the Ortell case, necessarily invalidate the substituted service for publication based on such affidavit or sworn bill. In this case the bill does allege that the defendant had made diligent search, inquiry and effort to ascertain defendant's present address, alleges her residence as being Carson City, Nevada. As was stated in Ortell case, it is not necessary that the affidavit should follow the exact language of the statute, but it should set up such facts as show a compliance with what the statutes require.

In the case of Balian v. Wekiwa Ranch, 97 Fla. 180, 122 So. 559, this Court said:

"Sec. 3111, *supra,* provides four alternative situations in which the complainant may have an order of publication to effect constructive service upon the classes of defendants therein referred to, namely, (1) Whenever the complainant, his agent or attorney, shall state in a sworn bill or affidavit,

duly filed, the belief of affiant that the defendant is a resident of a State or County other than this State, specifying as particularly as may be known to affiant such residence, *or* (2) that his residence is unknown, *or* (3) that, if a resident, he has been absent for sixty days next preceeding the application for the order of publication, and that there is no person in the State the service of a subpoena upon whom would bind such defendant, *or* (4) that he conceals himself so that the process cannot be served upon him.' (Italics supplied.) Certain other statements are also required concerning the age of defendant, which are necessary with reference to all classes of defendants as above enumerated."

"Each of the four alternative situations above mentioned, including that in which the affiant states that defendant's residence 'is unknown,' are set off in commas, and are separated by the disjunctive 'or,' indicating the legislative intent that each situation should furnish a distinct, independent and substantive basis for the issuance of an appropriate order of publication, other requirements of the statute being complied with."

Appellant contends that the allegations of the bill as to the residence of the defendant were contradictory and insufficient. Attention is called to the fact that in the very beginning paragraph of the bill it is alleged that the "true residence and home and place of abode" of the defendant is Kissimmee, Osceola County, Florida, whereas the second paragraph of the bill alleges that the defendant, "ever since October 1, A. D. 1929, has been and still is a non-resident of the State of Florida," and that her "present residence" is "Carson City, Nevada." Appellant contends that inasmuch as rule 17 of the Chancery Practice, which was in effect when this bill was filed, required that "Every bill in the introductory part thereof shall contain the names and

places of abode of all parties plaintiffs and defendants, by and against whom the bill is brought," the complainant below was bound by the first allegation in the introductory part of the bill which alleged the residence of the defendant as being Kissimmee, Osceola County, Florida, and that therefore under the statute it was incumbent upon the complainant to further allege that the defendant had been "absent more than 60 days next preceding the application for order of publication" in order to lay the necessary predicate for service by publication.

It is contended by appellee that the direct allegation in the second paragraph of the bill that the defendant had been a non-resident of the State since October 1, 1929, which was more than a year before the bill was filed, is tantamount to an allegation that the defendant had been absent for 60 days next preceding the application for the order of publication. There is considerable force in this contention, but without deciding it, we will pass on to the main contention of appellee as regards this question of the sufficiency of the substituted services.

The main contention of appellee is that the introductory allegation to the effect that the "true residence and home and place of abode" of the defendant was Kissimmee, Osceola County, Florida, was, in effect, an allegation of the *legal domicile* of the defendant, and that such legal domicile, under the law, continued to be that of her husband until the decree of divorce was rendered, or at least until the bill for divorce was filed; whereas the allegation in paragraph two of the bill, pertaining to the non-residence of the defendant since October 1st, 1929, and that her "residence" at the time the bill was filed was Carson City, Nevada, obviously used the word *residence* in the sense in which it is employed in Section 4895 C. G. L., which was

Section 3111 Rev. Gen. Statutes and is the statute above referred to dealing with constructive service by publication, which statutory meaning may be, and in this case is, actual present residence as distinguished from legal domicile; the purpose of the substituted service provided by the statute being, as stated in the Ortell case, to *reach* the defendant, if possible so to do.

We are sufficiently impressed with this argument to uphold the finding of the court below that the complainant was entitled to ask, and the defendant had received, due service of process by publication, and that the decree *pro confesso* had been duly and regularly entered. In this contention it might be noted that in the final decree the court found and held that the "marital domicile" of complainant and defendant was the State of Florida. While the quoted allegations of the bill are in some respects unfortunately worded and at least apparently contradictory on this subject of residence, we think the allegations as a whole (which, as pertains to this feature of the case are quoted in full above), indicate with reasonable clearness that the allegations in the introductory paragraph of the bill was intended as.an allegation of legal *domicile* as distinguished from an allegation of *residence* under the constructive service statute, which latter allegation as to the residence of the defendant appears to have been sufficiently made in paragraph two of the bill.

Perhaps the interpretation of no words used in legal phraseology has given the courts of this country more labor and difficulty, and has resulted in a greater variety of judicial opinion, than the interpretation of the words *domicile* and *residence*. Undoubtedly, much of the apparent variety and inconsistency in the decisions is due to the fact that the words resident and residence, and non-resident, as well

as the word domicile, are evidently used in a different sense in some statutes from that in which they are used in other statutes relating to different subjects. We will make no attempt to review or reconcile the various decisions on this subject. Our own decisions appear to be fairly consistent as to those phases of the subject with which we have had to deal thus far in this jurisdiction.

Perhaps as good a definition as any for the word *domicile* is that given in 19 Corpus Juris, 392, *et seq.*, which reads:

"Domicile is the relation which the law creates between an individual and a particular locality, or country. It is the legal conception of home. The word 'domicile' is derived from the Latin 'domus', meaning a home or dwelling house, and no one word is more nearly synonymous with 'domicile' than the word 'home,' which is almost always used in defining or describing the legal concept of domicile. In a strict legal sense, the domicile of a person is the place where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. The definition of domicile as a habitation fixed in some place, with the intention to remain there always, has frequently been quoted, but it has generally been criticized as inapplicable to conditions in this country, and restated thus: That place is properly the domicile of a person in which his habitation is fixed, without any present intention of removing therefrom. This definition has been still further improved as follows: That place is properly the domicile of a person in which he has voluntarily fixed his abode, not for a mere special or temporary purpose, but with a present intention of making it his permanent home. The best definitions agree in making the elements of domicile residence and the intent to remain."

Among the cases cited in support of the above text-quotation is the case of Smith v. Croom, 7 Fla. 81, 152-153.

See, also, in this connection Warren v. Warren, 73 Fla. 764, 75 So. 35. In the latter case, it was held that so far as the statutes providing for the granting of alimony to a wife, when any of the causes for divorce exist in her favor, as well as the statute giving the wife the right to maintain a bill in equity against her husband for maintenance, where the legal residence or domicile of either of them is in this State, the words "legal residence or domicile" were treated as being practically synonymous, and we think correctly so. See also Chisholm v. Chisholm, 125 So. 694, 98 Fla. 1196.

The sixth and seventh headnotes in the Warren case read as follows:

"6. Legal residence or domicile may be acquired by one who coming from another State or Country actually lives in this State with the intention of permanently remaining here. In such case a domicile by choice is established."

"7. Legal residence or domicile in this State of one whose domicile of origin is here, or who may have established in this State a domicile by choice, is sufficient to give the court jurisdiction of the subject matter in a cause involving the duties and obligations arising out of his or her marital status with another, and temporary absence from the State even for a long period of years is not sufficient to divest the court of jurisdiction."

The meaning of the word domicile is very fully reviewed in Bouvier's Law Dictionary; in Words and Phrases, Vol. 2, pp. 2168-2180, and in 9 R. C. L. 538, *et seq.*

In distinguishing the differences in meaning between the word domicile and the word residence, it is said in 19 Corpus Juris, pp. 395, 396, 397, *et seq.*:

"While the terms 'domicile' and 'residence' are frequently used synonymously, they are not, when accurately used, convertible terms. The former is of more extensive sig-

nification and includes, beyond mere physical presence at the particular locality, positive or presumptive proof of an intention to constitute it a permanent abiding place. "Residence' is of a more temporary character than 'domicile.' 'Residence' simply indicates the place of abode, whether permanent or temporary; 'domicile' denotes a fixed, permanent residence, to which, when absent, one has the intention of returning. 'Residence' has a more limited, precise and local application than 'domicile,' which is used more in reference to personal rights, duties, and obligations. That there is a difference in meaning between 'residence' and 'domicile,' is shown by the fact that a person may have his residence in one place while his domicile is in another. It has also been said that domicile and residence are not synonymous for the reason that a person may have more than one residence at the same time, but only one domicile."

" 'Residence' as used in various statutes has been considered synonymous with 'domicile,' but of course this depends upon the intent of the particular statute as ascertained by construction of its provisions. The terms are not necessarily synonymous. Generally, where a statute prescribes residence as a qualification for the enjoyment of a privilege, or the exercise of a franchise, and whenever the terms are used in connection with subjects of domestic policy, domicile and residence are equivalent."

In the course of Mr. Justice ELLIS's opinion in the case of Warren v. Warren, *supra,* it was said: "Any place of abode or dwelling place constitutes a residence, however temporary it may be, while the term domicile relates rather to the legal residence of a person, or his home in contemplation of law. As a result you may be a resident of one jurisdiction although having a domicile in another." Citing 9 R. C. L. 539.

The general rule is that the domicile of the wife is that of the husband, and it has been held in a number of jurisdictions that the operation of this rule ordinarily is not affected by the fact that the wife is living apart from her husband in the absence of a judicial decree of separation or divorce, and that a wife who has left her husband and is living apart from him without just cause can acquire no separate domicile of her own prior to divorce, at least not in the absence of exceptional circumstances. 19 C. J. 414-416; 9 R. C. L., 543-546. The case of Herron v. Passailaique, 92 Fla. 818, 110 So. 539, recognizes this general rule, but in the opinion of Mr. Justice Terrell in that case, it was said: "But the great weight of authority supports the rule that when it becomes proper or necessary, the wife may acquire a separate domicile from that of her husband for the purpose of a suit for divorce by her." And, it was added, the proceeding for divorce may in such cases be instituted by the wife where she has her domicile; that is, the place of her permanent abode as distinguished from mere temporary residence. It was also held in that case that, "If the husband abandons the wife without cause, the matrimonial domicile remains with the wife and she may obtain a divorce there on constructive service that will be binding anywhere." In this case the situation is reversed, but the same principle would apply. Here, under the allegations of the bill and the testimony, the wife deserted the husband without cause, and the matrimonial domicile therefore remained with the husband, giving him the right to there sue for a divorce from the wife, based on constructive service under the statute on the grounds of non-residence of the wife, provided of course the proper predicate was made in the allegations of the sworn bill. It was also stated in the opinion of Mr. Justice Terrell in the case just quoted from that:

"No principle of law is better settled than this: The right of every State under the Constitution of the United States to regulate the matter of marriage and divorce within its own borders and to defend it against encroachment, and to fix and declare the matrimonial status of its own citizens, and the full faith and credit provision of the Constitution is not to be construed so as to defeat this right," etc.

In the case of Ortell v. Ortell, *supra,* it was held that it was not sufficient, in aid of a defective allegation of residence as being New York City, without more, to allege in the affidavit for service by publication merely the present "mail address" of the defendant as being in another city of considerable size, without giving the street address in either instance, as such mailing address may have been purely transient, temporary, and ineffective. It is true that in many cases the correctly stated mail address of the defendant might also be the same as, and truly denote, the *residence* of the defendant, and if this fact was sufficiently shown by the affidavit, it might be sufficient. And we have held that an allegation that a defendant was a non-resident and that his address was unknown, was sufficient *on collateral attack.* See Catlett v. Chestnut, 146 So. 241. On the other hand, the present mailing address of the defendant might not be at all synonymous with his residence. For instance, let us suppose that a traveling salesman should be the party defendant, and that the complainant well knew that such salesman had a settled residence or place of abode in a certain town or city, where he kept his belongings and to which he frequently returned from his various business trips and spent the larger part of his time. In such a case it would obviously be misleading and insufficient, in so far as the compliance with the statute is concerned, for the plaintiff to allege as the defendant's place of residence, or

as his mailing address, some one of the many towns or cities which he visited in the course of his business, although at the time of the making of the affidavit, he might actually have been transiently present in the town or city alleged as his residence or mailing address.  In such a case a copy of the order mailed to him at such transient address would not be at all likely to reach him.  Yet the word residence as used in Section 4895 C. G. L. should not be construed to be synonymous with domicile in all cases, although of course in many cases the residence and domicile of a defendant upon whom constructive service by publication is attempted, may be one and the same.  This thought is illustrated by the present case.  Technically, the domicile of the defendant wife continued to be, in the eye of the law, that of the husband, but her residence, within the meaning of the constructive service statute, might well have been at some other place, as alleged in the bill.  As was said by this Court, speaking through Mr. Justice STRUM, in the case of McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, "The resort to constructive service by publication is predicated upon necessity," and such statutes should provide "a reasonable method of imparting notice to the defendant where personal service cannot be effected by the exercise of reasonable diligence."  Thus, the word residence as used in Section 4895 C. G. L. should be construed in such a sense as to carry out the intent of the statute, which is, as already stated, to *reach* the defendant and *impart notice* to him or her of the pendency of the proceedings, as far as it is reasonably possible to do so.  In order to do this, it would not in all cases be sufficient to allege the legal domicile of the defendant instead of the actual residence and place of abode.  Thus, if a citizen and resident of this State, whose legal domicile is, and long has been, established in

this State, has a summer residence in North Carolina or New England where he spends six months of the year, including the entire summer, it would be proper, and more in consonance with the purpose of the statute, if constructive service were attempted to be made upon him during such summer period, when the plaintiff well knew that his actual place of abode was then at his summer home, to allege as his place of residence such summer home. The courts should satisfy themselves of the *bona fides* of the plaintiff in attempting to make constructive service under the statute. Thus it was said in McDaniel v. McElvy, *supra,* that "while allegations of a categorical nature which follow the words of the statute are sufficient as a predicate for the issuance of the order of publication, the Chancellor is not thereby precluded from requiring appropriate proof of those allegations, as any other allegation, as a prerequisite to the entry of a decree. What and how much evidence the court shall require to satisfy it upon the question of due diligence in these matters rests largely with the court granting the order."

In this case, the court seems to have been satisfied that the complainant, appellee here, had exercised due diligence and had acted in good faith in making the allegations contained in this bill with reference to this subject. It appears from the testimony that complainant had last seen his wife in Cape May, New Jersey, where they were visiting in July and August of 1929; that thereafter she went to Washington, D. C.; that defendant made repeated efforts to get her to return to his home in Kissimmee, Florida, but without results. Being asked to explain his allegation in the bill as to the residence of the defendant being in Carson City, Nevada, complainant testified that about June 1st, 1930, the wife disappeared from Washington with the boy;

that he couldn't hear from either one of them by any kind of communication up to October 9th, 1930, on the afternoon of which day he received a summons from the Nevada Court in regard to a divorce proceeding which his wife had brought against him there, accompanied by a restraining order restraining him from interfering with the boy; that he supposed his wife had gone to Nevada for the purpose of obtaining a divorce. The bill of divorce was filed October 29th, 1930. In these circumstances we do not think we would be authorized to set aside the finding of the circuit court, that service by publication has been perfected, that the court had jurisdiction of the parties, and that the decree *pro confesso* for failure to plead, answer or demur had been properly entered. We are inclined to think that the husband, when he received the service of notice from the Nevada court of a divorce proceeding brought by his wife, had good reason to believe that she intended to reside there temporarily at least, and even though her legal domicile may have continued to be that of the husband, in Kissimmee, Florida, her residence, within the meaning of the statute, was under the circumstances her actual place of abode, even though not intended to be permanent in character. It is true, the notations on the envelope returned to the clerk indicated that she had, to the knowledge of the post master at Carson City, changed her place of residence or address to Menden, Nevada, at the time the envelope enclosing the order for publication reached Carson City, but this by no means proves that the allegation in the sworn bill that her residence was Carson City, Nevada, was false at the time it was made. However, we are not called upon to pass upon the sufficiency of the evidence to convince the Chancellor of the *bona fides* and correctness of the allegations of the bill in regard to the residence of the defendant, such allegations being *prima facie* sufficient as made

and sworn to in the bill. The appellants here made no special appearance, either for the purpose of questioning the jurisdiction of the court, or to quash the service by publication for any reason, or to set aside the decree *pro confesso* so as to give her an opportunity to defend the case on its merits. She merely appealed from the final decree, and assigned as error not only to matters above discussed, but the action of the court on the merits, questioning by such assignments the sufficiency of the evidence to sustain the allegations as to desertion and as to the right of the father to the custody of the child.

While an appeal may be taken from a final decree by a defendant against whom a decree *pro confesso* has been entered, the general rule is that upon such an appeal the appellate court will only review the legality of the proceedings prior to the default. Ordinarily, after a decree *pro confesso* regularly taken has become absolute, the proceedings are *ex parte* and the defendant cannot object to mere irregularities therein, but the final decree must be proper and such as the complainant is entitled to take on his bill. Clarkson v. Louderback, 36 Fla. 660, 19 So. 887; Hart v. Stribling, 21 Fla. 136; Rabinowitz v. Houk, 100 Fla. 44, 129 So. 501. It is also a general rule that where all the allegations of a bill upon which relief is predicated are admitted, no proof is necessary to sustain the bill. However, divorce proceedings constitute an exception to this latter rule. Even where there is a decree *pro confesso*, the material allegations of the bill must be proven, and the uncorroborated testimony of the complainant is not sufficient to prove the ground of divorce. Dean v. Dean, 87 Fla. 242, 99 So. 816, and cases cited. But inasmuch as the testimony taken in this case appears to sufficiently sustain the allegations of the bill, it is only necessary for us to

inquire whether the allegations of the bill are sufficient to support the final decree.

We have already held that constructive service by publication in this case was sufficient to authorize the decree *pro confesso* which was entered. We are also of the opinion that the allegations of the bill formed a sufficient basis for the final decree as rendered. But there is one question regarding the sufficiency of the bill which is very earnestly contested by the appellant, and that is, those allegations of the bill supporting the prayer of the complainant that he be granted custody of the child. The particular insufficiency so insisted upon is that the bill, as well as the evidence taken in support thereof, shows that the child was not within the jurisdiction of the court, and not within the State of Florida, at the time the bill was filed or at the time the evidence was taken, and that therefore it clearly appears that the court was without jurisdiction to embrace in its decree the order awarding to the complainant father the custody of said child.

There are cases holding that a foreign decree of divorce awarding custody of the children, entered when neither the defendant nor the children were within the jurisdiction of the Court, so far as the award of the custody of the children is concerned, is of no effect for want of jurisdiction. 19 C. J. 367. There are also cases holding to the contrary. But even though the decree rendered in this case, awarding the custody of the child to the father, might not be given extra territorial effect by the courts of some of the other states, we are not at all convinced that the circuit court, in this case, was in error in awarding the custody of the child to the father, nor that it was without jurisdiction to do so. The case made by the bill and sustained by the evidence, was that the wife had more than a year before the suit was filed, deserted the husband without just cause; that she refused to return or to allow the child to return, though fre-

quently requested; that the last the husband had heard of his wife, before he learned of her presence in Nevada, was that, about five months before the suit was filed, his wife had disappeared from Washington, D. C., with the child.

It is well settled that the legal domicile of the child, under the facts alleged and proven in this case, continued to be that of the father; that is, in Osceola County, Florida, where the bill for divorce was filed. Beekman v. Beekman, 53 Fla. 858, 43 So. 927; 19 C. J. 410.

The statutes of the various states very generally authorize the court having jurisdiction of divorce proceedings to determine the question of the care, custody, and maintenance of the child of the marriage. 9 R. C. L. 472. Such is the provision of our own statute, Sec. 4993 C. G. L. The general jurisdiction of courts of equity in this regard is discussed in our recent case of Duke v. Duke, 147 So. 588. The bill in this case, and evidence supporting it, shows that the complainant father had frequently and urgently requested and demanded that his wife return to his home in Kissimmee, Osceola County, Florida, and bring the child with her. So there was no consent on his part to any change of domicile of either the mother or the child, and the legal domicile of the child remained in Osceola County, Florida. It is also well settled that the father is generally entitled to the custody of his infant children, where he is a fit person, as was alleged and shown in this case, to have such custody, and that the duty remains upon him to maintain, protect and educate them. 9 R. C. L. 471. Of course, this right of the father to custody is not unlimited nor inalienable, and when abused, or when the parent becomes unfit, the courts will interfere and remove such custody from the offending parent. There are a number of cases holding that, as between the parents, the decree of a foreign court awarding the custody of the children, is subject, as

between the parties, to modification only by the court that granted the decree, and should be given full force and effect by the courts of other states, even though the children may have been beyond the jurisdiction of the court at the time of the rendition of the decree. But, usually such decrees are considered as necessarily provisional and temporary in character, and are ordinarily not *res judicata,* either in the same court or that of a foreign jurisdiction, except as to the facts before the court at the time of the decree; that as to facts and conditions arising subsequently thereto, they have no controlling force; but, that while the action of the court rendering the decree is not entirely conclusive, it is worthy of consideration. 19 C. J. 366; 9 R. C. L. 477. In this connection see also Frazier v. Frazier, 109 Fla. 164, 147 Sou. 464; 19 C. J.; 9 R. C. L. 547; Schouler on Marriage and Divorce, 6th Ed. Sections 1878, 1896; Kenner v. Kenner (Tenn.) 201 S. W. 779, L. R. A. 1918 E. 587; Wear v. Wear (Kan.) 285 Pac. 606, 72 A. L. R. 425 and note, 441-448; Person v. Person, (La.) 135 So. 225; State ex rel. Cline v. Cuine, 91 Fla. 300, 107 So. 446. In the case of Person v. Person, supra, it was held that children, awarded to the father under separation decree and taken outside of the state, were still domiciled within the State, so that the court which made the separation decree retained jurisdiction to change the award of custody . In Schouler on Marriage and Divorce, 6th ed. Sec. 1877, it is said: "The act of the court of the domicile of the mother in awarding to her the custody of the child in a proceeding for divorce without personal service on the father is not a deprivation of his property within the 14th amendment." Citing the case of Kenner v. Kenner, *supra.* And in Sec. 1878 of the same work it is said: "The domicile of an infant is of importance where its property rights are concerned, but not in a divorce case where the welfare of the child is the

controlling consideration as to its custody. So when the child has been awarded to the mother by a court where the mother resides, and the child happens to be found in the State of the father's domicile, that court is not bound to restore possession of the child to him as a matter of right." See also in this connection Lanning v. Gregory, (Tex.) 99 S. W. 542, 10 Lrans 690.. It has also been held that where it is conducive to the best advantage of the child its custody may be awarded to the parent who resides in another State. 19 C. J. 348 and cases cited. In the case of Anderson v. Anderson, 74 W. Va. 124, 81 S. E. 706, it was said: "That the children may not have been within the jurisdiction of the court at the time of the institution of the suit or entry of the decree is immaterial, since the parties litigant were the father and mother and the cause of action, the right of custody, in so far as it affected the children, was between them, and the court had full jurisdiction over them with power to render personal decree."

Our conclusion is that, inasmuch as the trial court had the jurisdiction in this case to deal with the marital status of the parties and to render a decree of divorce, as it did in favor of a husband and against the wife, it also had statutory jurisdiction, under the allegations of the bill and the evidence, to award the custody of the child to the father, the legal domicile of the child remaining that of the father, there is no reversible error in the decree so rendered; even though such decree might be subject to later change or modification by the court which rendered it, or by a different award by some other court having jurisdiction, if changed conditions, and the welfare of the child, should demand it, in the light of the appropriate principles of law governing the custody of infants. As was said by Schouler in Sec. 1896 of the work above cited: "The child is a ward of the State where he resides, and as such pecu-

liarly under its guardianship, and that State is not bound to remand it to the jurisdiction of another State. It has been held, however, that a decree of a sister State as to the custody of the children is *res judicata,* and is entitled to full faith and credit under the Federal Constitution, but it does not conclude the question for all time, since new facts may create new issues. The relation of parent and child is a statute and may be changed with changing circumstances, and the welfare of the child is the paramount consideration and may be best subserved at one time by awarding its custody to one parent and at another time just the opposite course should be taken. These judgments are necessarily provisional and temporary in character, and are ordinarily not *res judicata,* either in the same court or that of a foreign jurisdiction, except as to facts before the court at the time of the judgment."

Finding no reversible error in the record, the decree of the Court below will be affirmed.

Affirmed.

DAVIS, C. J., and WHITFIELD, and TERRELL, J. J., concur.

ELLIS and BUFORD, J. J., concur in the conclusion.